## BLAND v. BEASLEY.

### (Filed March 27, 1906).

*Boundaries—Evidence of Common Reputation—When Competent—Evidence.*

1. To justify the admission of evidence of common reputation on questions of private boundary, the time at which this reputation had its origin should be a comparatively remote period and always *ante litem motam* and should attach itself to some monument of boundary or natural object, or be fortified by evidence of occupation and acquiescence tending to give the land some fixed and definite location.

2. For the purpose of locating a certain line it was error to permit a witness to testify that he knew the line was the line in question from "what people said," where it appeared that his knowledge grew out of a survey made less than seventeen years before action brought, and the only person he ever heard say so was a person who was alive and a witness in the case.

ACTION by J. T. Bland and another against L. A. Beasley and others, heard by *Judge W. B. Councill* and a jury, at the September Term, 1905, of the Superior Court of PENDER.

The plaintiffs derive title by mesne conveyances under a

grant from the State to William and James Hall, dated December 22, 1819. The question at issue was one chiefly of boundary and depended to a great extent on the correct location of this grant. The description was said to begin on "a pine, Abram Hall's corner." As an aid to the true location of this corner, the plaintiffs put in evidence a grant to Abram Hall, dated May, 1816, which was said to "begin at a pine on Halsey's line," and as a further circumstance tending to show that the beginning corner of his grant was located as claimed by the plaintiffs, it became material, certainly relevant, to show that the beginning corner of this Abram Hall grant was at a pine in "Halsey's line," and in this way the existence and correct placing of this "Halsey line" became relevant.

For that purpose the surveyor (Colvin) in the course of his examination by the plaintiffs, was asked: "Q. Do you know where the Halsey line is? A. I only know what people say. Q. What indicates the Halsey line on the map? A. The line A D K—43—42, and from 42 back to A. Q. Did you ever run that patent except in 1884? A. No. Q. How long have you known that line by general reputation as the Halsey line? A. Since 1884. The eastern end of the line is at A. The western end is at K." To all and each of these questions and answers, except the first, the defendants excepted.

On cross-examination, touching this Abram Hall patent and Halsey line, the same witness made answer to questions as follows: "Q. Who first told you, since the survey began, that that was the Halsey line from 30 to the ditch branch, and from A to K? A. All I know is from the survey. Q. You say Jim Cowan is the only man you ever heard say that was the Halsey line? A. Yes." Jim Cowan was living and a witness in the case. The defendants then moved to strike out the testimony of this witness as to reputation of the location of the Halsey line. The motion was denied and the defendants excepted. The evidence was admitted as substantive evi-

dence on the location of the Halsey line. Verdict and judgment for the plaintiffs, and the defendants excepted and appealed.

*Jas. O. Carr, J. D. Kerr* and *E. K. Bryan* for the plaintiffs.

*Stevens, Beasley & Weeks* and *Shepherd & Shepherd* for the defendants.

HOKE, J., after stating the case: The correct placing of the Halsey line was a fact pertinent to the issue, but if the plaintiffs considered this material to the case, they should have established it by proper testimony. It is contended by the plaintiffs that common reputation is admissible on questions of boundary, that the testimony above set out is of that character, and the rulings of the court concerning it can be sustained on that ground. It is true that evidence of both hearsay and common reputation is received with us in cases of disputed private boundary, but this is an exception to the general rule, which requires that the rights of litigants must be determined on sworn testimony. Such testimony, in England, is not admitted in questions of private right, and the principle was only adopted here from necessity, and where, from lapse of time or changing conditions, it has become "difficult, if not impossible," that better evidence should be had.

Speaking of such testimony (hearsay) in *Sasser v. Herring,* 14 N. C., 342, *Henderson, J.,* says: "It is the well established law in this State. And if the propriety of the rule was now *res integra,* perhaps the necessity of the case, arising from the situation of our country, and the want of self-evident termini of our lands, would require its adoption. For although it sometimes leads to falsehood, it more often tends to the establishment of truth. From necessity, we have in this instance sacrificed the principles upon which the rules of evidence are founded."

While such testimony is thus received of necessity, it should be confined to the reasonable requirements of the necessity that called it forth, and the rules and limitations for safeguarding its application should be carefully observed.

In *Hemphill v. Hemphill,* 138 N. C., 504, the court, in speaking of this character of evidence, said: "It is the law of this State that under certain restrictions, both hearsay evidence and common reputation are admissible on questions of private boundary"—citing *Sasser v. Herring,* 14 N. C., 340; *Shaffer v. Gaynor,* 117 N. C., 15, and *Yow v. Hamilton,* 136 N. C., 357. And in the same opinion, speaking of the restrictions placed upon evidence of common reputation, the court said: "This reputation, whether by parol or otherwise, should have its origin at a time comparatively remote and always *ante litem motam.* Second, it should attach itself to some monument of boundary or natural object, or be fortified by evidence of occupation and acquiescence tending to give the land some fixed and definite location"—citing *Tate v. Southard,* 8 N. C., 45; *Dobson v. Finley,* 53 N. C., 496; *Mendenhall v. Cassells,* 20 N. C., 43; *Westfelt v. Adams,* 131 N. C., 379, and *Shaffer v. Gaynor,* 117 N. C., 15.

Applying the principles set forth in these cases, we are of the opinion that the testimony of the witness Colvin on the matter in question does not comply with the conditions required for its reception. Here, the true location of the Halsey line had become a relevant circumstance, and granting for the present that the statement of this witness amounts to evidence of common reputation, this line, as shown by the plat, was one boundary line of a large tract of land lying adjacent to the land in dispute. No deed covering this tract of land is introduced, no monument or natural object is shown as marking the boundary of this tract, and no occupation or possession of any such tract by Halsey or any of his descendants or grantees is established tending to give it any fixed or definite location.

As said by *Daniel, J.,* in *Mendenhall v. Cassells,* 20 N. C., 51: "In a country recently and of course thinly settled, and where the monuments of boundaries were neither so extensively known nor so permanent in their nature as in the country of our ancestors, we have from necessity departed somewhat from the English rule as to traditionary evidence. We receive it in regard to private boundaries, but we require that it should either have something definite to which it can adhere, or that it should be supported by proof of correspondent enjoyment and acquiescence. A tree, line, or watercourse may be shown to have been pointed out by persons of a bygone generation as the true line or watercourse called for in an old deed or grant. A field, house, meadow or wood may be shown to have been reputed the property of a particular man or family, and to have been claimed, enjoyed and occupied as such. But a mere report, unfortified by evidence of enjoyment or acquiescence, that a man's paper title covers certain territory, is too slight and unsatisfactory to warrant a rational and conscientious person in making it the basis of a decision affecting important rights of his fellow men, and therefore, as far as we are advised, has never been received as competent testimony." And in reference to the time, it has been held in this State that in order to admit evidence of general reputation, unlike hearsay in this particular, it is not necessary to show that such reputation had its origin in the declarations of persons who are dead. *Dobson v. Finley, supra.*

But the decisions are also to the effect that to justify the reception of such evidence, the time at which the common reputation had its origin should be at a remote period. "Comparatively remote," is the term used in *Hemphill's case, supra.* It was so used for the reason that as the principle was established of necessity, when from changing conditions and the absence of permanent monuments, better evidence of boundary could not be procured, so the time may vary to some extent, as the facts and circumstances may show that the neces-

sity does or does not exist. On the admission of such testimony as to the time required, and the test to be applied, it is held in *Neiman v. Ward,* 57 Pa., 67, that "Reputation and hearsay is such evidence as is entitled to respect when the lapse of time is so great as to render it difficult to prove the existence of original landmarks." This alleged general reputation had its origin no further back than 1884, less than 17 years before action brought. It grew out of the survey, the witness said, and on the facts and circumstances of the case, we are of opinion that it is not sufficiently remote to be admitted as evidence.

While we have discussed the question on the idea that a general reputation has been testified to, because it was very earnestly contended that the ruling of the court should be sustained on that principle, as a matter of fact the testimony does not make out a case of general reputation at all, and we could well hold that there was error in not striking out this portion of the evidence in accordance with the defendant's motion. The witness said he knew the line was the Halsey line from "what people said." Again, he said his knowledge grew out of the survey in 1884, and the only person he ever heard say so was Jim Cowan, who was alive, and a witness in the case. This is no testimony of a general reputation, but simply the assertion of a fact by an individual who is still living.

A general reputation must be the common report of the community, and while it may be established by the assertion of individuals, "such assertion must be in effect the statement of the reputation." As stated in the books, "an individual declaration must thus appear to be the result of a received reputation, and the individual declarant is thus merely the mouth-piece of the reputation." 1 Greenleaf Ev., sec. 139; 2 Wigmore Ev., sec. 1584—both authors citing Wood, B., in *Moseley v. Davies,* 11 Price, 180.

There was error in admitting the testimony, and a new trial is awarded.

New Trial.