CALDWELL LAND AND LUMBER COMPANY v. J. A. TRIPLETT.

(Filed 8 December, 1909.)

1. **Boundaries—Declarations—Evidence.**

Declarations of deceased persons and common reputation, under certain circumstances are received here as evidence on questions of private boundary, the limitations as to declarations being that they should have been made *ante litem motam;* that the

declarant is dead when they are offered and was disinterested when they were made; and as to both species of evidence it is required that the testimony should attach itself to some monument of boundary or natural object or be fortified by some evidence of occupation and acquiescence tending to give the land some fixed and definite location.

### 2. Same—Presence of Declarant.

In the case of declarations it is not required that the declarant should be physically present at the point indicated if he describes the same so that it can be located with a reasonable degree of certainty.

### 3. Same—Trespass—Reputation—Declarations—Definiteness.

In an action of trespass on land it was admitted that the answer to an issue as to the beginning corner of a grant at a black gum tree would control in the locating the land in dispute. Evidence was offered by a witness of the declarations of one L. which did not speak of the beginning corner in express words as a "gum," but that it was "right at the intersection of" certain definite trails and a ridge, and the marked gum was subsequently found where he had stated. The witness had the calls of the tract of land read to declarant, and in the calls was "the character of the tree." *Held*, evidence of declarations sufficiently definite to designate the tree as the beginning corner of the grant.

APPEAL from *Justice, J.,* May Term, 1909, of CALDWELL.

Civil action, for trespass on land and to restrain the cutting of timber.

Plaintiff claimed title under two grants, Nos. 900 and 907, to G. W. Folk, dated in 1874. These grants were introduced, and it was admitted that plaintiff had *mesne* conveyance of this title, and that same covered the land in dispute.

Defendant claimed title under two grants to Reuben Estes—one, dated in 1802, for 300 acres, and the second, dated in 1803, for 100 acres; and the question was in the location of these two grants, and this, in turn, depended on the correct location of the beginning corners, respectively. To determine these questions, admitted to be controlling, issues were submitted and responded to by the jury, as follows:

1. "Is the black gum at the point designated on the map, 1, at the index, the beginning corner of the 300-acre grant, No. 3113, to Reuben Estes, in 1802?" Answer: "Yes."

2. "Is the maple at the point designated on the map as No. 5, at the index, the beginning corner of the 100-acre grant, No. 3295, to Reuben Estes, in 1803?" Answer: "Yes."

On the trial, J. M. Bernhardt, a witness for defendant, was allowed, over plaintiff's objection, to state the declarations made to witness by one Luther Moore as to the placing of the beginning corner of the 300-acre grant, under which defendant claimed part of the land, Luther Moore being dead at the time

of the trial, and the declarations having been made to witness before controversy had arisen, the declarant being sixty-five or seventy years of age at the time and not being in any way interested; the statement of the witness being as follows: "I have heard Luther Moore say where this corner was. The trail represented on this map runs from the black gum down to about the point marked 'creek' on the large map. The path led from main Wilson Creek across by this black gum, and then from Rock House Creek, and then on to the Gragg prong at Madison Gragg's house. The main Yancey Ridge is shown by these dots. I only know what Luther Moore said as to whether he ever did any surveying. I know that he was a hunter."

Q. "What did he say to you about the beginning corner?" A. "He said it stood near the intersection of these two trails— one up Yancey Ridge, and the other leading from main Wilson's Creek to Madison Gragg's."

Q. "What did he say it was a corner of?" A. "The 300-acre Estes grant."

Q. "Did you afterwards find it?" A. "I found a gum tree there, marked as a corner."

Q. "How far from the intersection of those trails?" A. "Not over twenty feet; marked on the large map. At the time Moore was talking to me, he was at the Globe, five miles from this point. He told me the corner stood right at the intersection of those trails—Yancey Ridge and the one leading from Silas Coffey's, on main Wilson's Creek, across Rock House Creek to Madison Gragg's. I think he said the beginning corner; I am certain he did. I don't think he told me what sort of beginning corner it was. He didn't say whether it was pine, black gum, oak or chestnut. I had the calls of the piece of land. I had it and read it to him. The calls had the character of the tree."

*W. C. Newland* and *Aycock & Winston* for plaintiff.
*Jones & Whisnant* and *Mark Squires* for defendant.

PER CURIAM: The declarations of deceased persons as evidence on questions of private boundary and general reputation on such an issue has been the subject of a number of recent decisions of this Court. *Lumber Co. v. Branch,* 150 N. C., 240; *Bland v. Beasley,* 140 N. C., 629; *Bullard v. Hollingsworth.* 140 N. C., 634; *Hemphill v. Hemphill,* 138 N. C., 504; *Yow v. Hamilton,* 136 N. C., 357; *Shaffer v. Gaynor,* 117 N. C., 15.

As to declarations of a single witness, it is required that the declarant be dead when they are offered, and they should have

LUMBER COMPANY *v.* TRIPLETT.

been made before the controversy arose, and by a disinterested person; and, both as to declarations and general reputation, the evidence must not be indefinite and general in its nature, but, as said in *Bland v. Beasley, supra,* "It must attach itself to some monument of boundary or natural object, or be fortified by evidence of occupation and acquiescence tending to give the land some fixed and definite location."

In *Gaynor's case, supra,* the declaration was in reference to a tree. In *Hemphill's case, supra,* the general reputation was admitted that a divisional line ran along the top of a certain ridge, a natural object, otherwise described and defined in the testimony. The objection chiefly urged to the testimony admitted in the present case was that the declarant was not physically present at the corner when the declarations were made, and that he did not sufficiently designate and describe the tree. But this first question has been expressly decided against appellant's position in *Westfelt v. Adams,* 131 N. C., 379, citing *Scoggins v. Dalrymple,* 52 N. C., 46; and on the second, while the declarant did not speak of the beginning corner in express words as a gum, the tree designated as the beginning corner in the grant, he gave a very clear indication of its placing, the important question; "right at the intersection of those trails, Yancey Ridge and the one leading from Silas Coffey's, on main Wilson's Creek, across Rock House Creek to Madison Gragg's," and the marked gum was found just where he had stated. Even if it be conceded that the witness should name the tree designated in the grant, this, by fair intendment, was also done; thus, "He didn't say whether it was a pine, black gum, oak or chestnut. I had the calls of the piece of land. I had it and read it to him."

The objection that there was no evidence as to the location of the 100-acre grant is without merit. There was evidence as to the location of the beginning corner called for in this grant, "A maple standing on the N. E. side of the ridge," and there was testimony as to natural objects called for in the grant, which further tended to locate it.

We find no reversible error in the trial, and the judgment on the verdict is affirmed.

No error.