R. H. GRAY v. J. S. COLEMAN ET AL.

(Filed 12 April, 1916.)

**1. Deeds and Conveyances—Description—Natural Objects—Ambiguity—Questions for Jury.**

Ordinarily natural objects, properly identified, will control course and distance in the description of lands in a deed; but where there is ambiguity as to what is the natural object called for, so as to require parol evidence of identification, the question must be referred to the determination of the jury.

**2. Deeds and Conveyances—Descriptions—Natural Objects—Private Lines.**

A call in a conveyance of land to the line of another tract, when such line is fixed and established or capable of being so fixed and established by the usual rule of locating land, is to be considered a natural object within the meaning of the principle; and natural objects in strictness, such as creeks or rivers, when they have a distinct and definite identification, are given preference over a call by marked line and artificial corners, unless these last were made for the present purpose of executing a deed and contained in a survey made for that purpose.

**3. Deeds and Conveyances—Descriptions—Natural Objects—Streams—Ambiguity—Evidence—Trials—Questions for Jury.**

In an action of trespass, involving the true location of the divisional line between two adjoining owners of land, the question was made to depend upon the following description in a former deed in plaintiff's chain of title: "thence N. 86 E. 45 poles to a pawpaw gum on the main run of Deep Creek; thence down the run of said creek by a line of marked trees, S. 2 E. 92 poles to a white oak; thence W. 22 W. 20 poles to a pawpaw on the main run of said creek," etc. There was evidence tending to show that some distance south of the point where the description touched Deep Creek it divided into two prongs of about equal size, coming together again before reaching the southern terminus, where it is again spoken of as the main channel, and that the trees were marked on the eastern prong, with other evidence of identification, in accordance with plaintiff's contention, the *locus in quo* lying between these two prongs. *Held*, it was for the jury to determine, upon the evidence, which run of Deep Creek was designated by the parties and referred to in the deed as "down said run," etc., to a "white oak."

**4. Deeds and Conveyances—Descriptions—Natural Objects—Streams—Intent —Instructions—Appeal and Error.**

In this action of trespass, involving the true divisional line between two adjoining owners of land, the question was made to depend upon whether the line is with the eastern or western prong of a creek which separates along the line of description and comes together again before reaching the next call in the deed in the plaintiff's chain of title. *Held*, reversible error to the plaintiff's prejudice for the trial judge to instruct the jury that the true location of the line would depend upon "the run of the main creek as it was when this call appeared in plaintiff's original deed," for it should depend upon the intention of the parties in using the terms at the time, to be determined by the jury.

**5. Deeds and Conveyances—Evidence—Declarations Against Interest.**

A deed in defendant's chain of title, made in 1833, tending to show that the true divisional line in dispute between adjoining owners of land was in accordance with the plaintiff's contention, and against the interest of the grantor therein, is held to be competent evidence in plaintiff's favor under the circumstances of this case.

CIVIL ACTION of trespass on realty, involving chiefly a question of boundary, tried before *Bond, J.,* at November Term, 1914, of HALIFAX.

On the trial there was proof that plaintiff owned and was in possession of a tract of land of about 225 acres, the southernmost portion of

a larger tract and the eastern boundary of the deeds conveying the title, the calls directly relevant to the question presented being as follows: "Beginning at a black gum, standing in the run of Saw Scaffold Branch, thence N. 86 E. 45 poles to a pawpaw gum on the main run of Deep Creek, thence down the run of said creek by a line of marked trees, S. 2 E. 92 poles to a white oak, thence S. 22 W. 152 poles, thence S. 34 W. 20 poles to a pawpaw on the main run of said creek in the Benjamin Dickens line," etc.

In June, 1853, Moses Smith, Sr., then owner of the entire or larger tract, conveyed the northern part of same to Moses Smith, Jr., the dividing line between them running from the white oak and called in that deed the Taylor and Lemuel Bell corner. Plaintiff, as stated, owns the southern portion of this larger tract. The facts in evidence also tended to show that, some distance south of the pawpaw gum, Deep Creek divided with two prongs, each running in a southerly direction and coming together again at or before reaching the southern boundary at Dickens' hole. The land in dispute is between these two prongs, and plaintiff claimed and offered evidence tending to show that the eastern prong was the main run of Deep Creek and was the prong designated and referred to by the parties in the various deeds and the one to be followed in running the calls, S. 2 E. and S. 22 W. and S. 34 W., etc.

There was evidence on part of plaintiff also tending to show that the white oak called for in the boundary was at or near the eastern prong, and that the line of marked trees followed the same.

There was evidence on the part of defendant tending to show that the western prong was the main run of Deep Creek and the line designated and called for in the deeds. The cutting done by defendants was on the land lying between the two runs of the creek, and the facts in evidence tended to show that if the eastern run of the creek was the correct boundary of plaintiff's deeds, there had been a wrongful trespass by defendant, and if the western was the true location, no wrong had been done.

There was verdict for defendant. Judgment. Plaintiff appealed, assigning for error certain portions of his Honor's charge and two rulings of the court on questions of evidence.

*E. L. Travis and A. P. Kitchin for plaintiff.*
*Murray Allen and R. C. Dunn for defendant.*

HOKE, J. It is an established position in our law of boundary that in case of irreconcilable repugnancy, natural objects called for and properly identified will control course and distance, and that the line of another tract, when fixed and established or capable of being so fixed

GRAY v. COLEMAN.

and established by the usual rules for locating land, is to be considered a natural object within the meaning of the principle. *Lumber Co. v. Bernhardt,* 162 N. C., 460, and authorities cited.

It is also recognized that, as a general rule, natural objects in strictness such, as a creek or river when it has distinct and definite identification, are to be given preference over a call by marked lines and artificial corners, unless these last were made with the present purpose of executing a deed conveying the land contained in the survey and the same is made accordingly. *Lynch v. Allen,* 20 N. C., 190. And the cases on this subject further hold that when there is ambiguity as to what is the natural object called for, and to such an extent that parol evidence is required to identify it or to establish what is intended by the call, the question must be referred to the jury for decision, and, in some instances, the call for marked lines will be adopted as affording the safer guide to a correct location. *Lumber Co. v. Lumbr Co.,* 169 N. C., 80; *Bonaparte v. Carter,* 106 N. C., 534; *Baxter v. Wilson,* 95 N. C., 137; *Gainey v. Hays,* 63 N. C., 497; *Hurley v. Morgan,* 18 N. C., 425; *Cherry v. Slade,* 7 N. C., 82. In *Gainey v. Hays, supra,* the boundary line in dispute was "the main road from Smith's ferry to Bass's ferry on the Neuse," and, there being two roads between the points designated, it was referred to the jury to determine "which of the roads was intended by the parties to the deed." And in *Cherry v. Slade, Henderson, J.,* speaking generally to the question, said: "I think a *venire facias de novo* should be awarded, because the jury, instead of finding the facts, have only found the evidence. That the line C D is Ward's line, or a line of a tract of land belonging to Ward, is matter of evidence. That it is the line of Ward called for in Hislop's patent is a question of fact for the jury to find from the evidence, and this fact may depend upon a variety of circumstances, all proper for the consideration of the jury. This error has become too common, from confounding the evidence with facts. A line, when once established to be the one called for, no matter by what evidence (if it be legal evidence), whether it be artificial or natural, will certainly control course and distance, as the more certain description. A natural boundary, such as a water-course, is distinguished from other water-courses by its name, or by its situation, or by some other mark. One of those means of identifying the water-course cannot control all the rest, if those other means are more strong and certain. A name, for instance, is the most common means of designating it; and this, in general, is sufficiently certain; but it cannot control every other description; and where there are two descriptions incompatible with each other, that which is the most certain must prevail. Cases might be put where it must be evident that the parties were mistaken in the name, and, therefore, the

GRAY *v.* COLEMAN.

name must yield to some other description more consistent with the apparent intent of the parties. It is true that in cases of water-courses or natural boundaries, and in some cases of artificial boundaries which are of much notoriety, and have, therefore, obtained well known names, the other descriptions must be very strong; but if they be sufficiently so, the name must give way and be accounted for from the misapprehension or mistake of the parties."

On careful consideration of the record and the facts in evidence, we are of opinion that the plaintiff has not had the benefit of the principles upheld by these last cases, and that reversible error has been committed to his prejudice.

From these facts it appears that "the pawpaw corner," the first point the plaintiff's deed purports to touch Deep Creek, there was one main creek, running south, and some distance below that the creek divided into two prongs of about equal size and making it at least difficult to determine which of the two was the main run; that these prongs came together at or before the termination of the southerly calls of plaintiff's deed, and there again the point is designated as the main run, while the call for the corner lines, between the northern and southern terminals, is down the run of said creek, omitting the word "main" except in so far as the word "said" may be held to indicate main.

The trespass, if any, was between these two runs, and, if the eastern is the true location of the *run* referred to in these deeds, the plaintiff should recover.

There is evidence on the part of the plaintiff that the white oak at the termination of the first southern call was on the eastern run, and there was also a cypress, with evidence tending to show it was another monument, and, considering all the evidence bearing on the question, we are of opinion that a proper application of the authorities recited requires that the court should have left it to the jury to decide which run was designated by the parties and referred to in the deed as "down the said run" to a "white oak."

In two or three places in the charge of the court, and in laying down the rule to guide them to a correct conclusion, the jury were distinctly instructed that the true location of these eastern lines was "down the run of the main creek as it was when this call appeared in plaintiff's original deed in 1826." Not what the parties to the instrument intended by the call "down the said creek," but "down the main creek as it was at that date." True, we have repeatedly held that "what are the boundaries of a tract of land is a question of law," but, as shown in the cases referred to, where there is ambiguity as to the call of a natural object, the jury must decide what object the parties intended, which run they intended when they wrote, as part of the

description, "down the run of said creek," and the relevant evidence as to the probable existence of corners called for, etc., should be properly weighed and considered in deciding the question. True, at the very close of his Honor's charge he instructed the jury as follows: "If the plaintiff has satisfied you by the greater weight of the evidence that the main run of the swamp at the time it was called for in the old deed had these marked trees standing on it which are called for in his description in the complaint and in the deeds, and that was the main run of the swamp, so regarded by the parties at the time the deed was made, you would answer the first issue 'Yes.' If, on the other hand, you find that at the time that the deed was given that the marked trees called for stood in the Higgs hole run, and that that was referred to by the parties as the main run of the swamp, then it would be your duty to answer the first issue 'No,' " and this is very near in accord with the authorities; but, as stated, at least three times in the body of the charge he had instructed them that the "main run of the creek would control," necessarily giving the impression that this would be true regardless of what the parties intended, and we think the jury must have been left in uncertainty as to what was the true rule for their guidance in determining the issue.

Again, plaintiff offered to put in evidence the record of a division of the lands of Benjamin Bell, made in 1833, showing said land was divided into six portions, and offered also to prove in this connection that lot 6, afterwards known as the Taylor land, had been acquired and was held by Mrs. DeLany, under whom defendant claimed, and that same contained descriptive calls tending, in connection with other facts and papers already in evidence, to support the location of the eastern line as claimed by plaintiff, among other things, tending to show that eastern run was designated as the "main run" of the creek, and this as far back as in 1833, and calling also for a white oak, designated and claimed by plaintiff as his own corner on or near the eastern run, etc.

The record and accompanying deed were excluded by the court.

We were not favored with an oral argument for defendant, and it is sometimes difficult to apprehend the full significance of an objection in an extended trial of this kind, but, as now advised and on the record as we now understand it, we are of opinion that this record should have been received. It seems to be the admission of a former proprietor of this lot No. 6 against the interest of such proprietor and tending to establish the location of the divisional line between them as claimed by plaintiff.

Under the authorities apposite, the record was relevant to the inquiry, and should have been received. *Smith v. Moore,* 142 N. C., pp.

277-286; *Ratliff v. Ratliff,* 131 N. C., 425; *Cansler v. Fite,* 50 N. C., 424; *Peace v. Jenkins,* 32 N. C., 355.

For the errors indicated, plaintiff is entitled to a new trial of the issues, and it is so ordered.

*Venire de novo.*