JEREMIAH NEWKIRK AND WIFE, MAZIE NEWKIRK, v. HUGH PORTER, HENRY NEWTON, HANNAH NEWTON CARR, ELIZABETH HIGH-SMITH, HATTIE STRINGFIELD, CALLIE NEWKIRK, ROSA NEW-KIRK, HATTIE BEATTY, WALTER HIGHSMITH, HAYES NEWTON, CARRIE HERRING, HATTIE NEWTON HIGHSMITH, GENEVA HEN-DERSON, WILLIE HERRING, AND ANNIE TODD.

(Filed 19 May, 1954.)

1. **Trespass to Try Title § 3—**

Where, in an action to recover damages for trespass, defendants admit plaintiffs' title to the land embraced within the description in plaintiffs' deeds, but dispute the location of the dividing line between plaintiffs' land and the land of defendants, plaintiffs are not required to prove title, but only that the disputed area lies within the boundaries of their tract.

2. **Same—Plaintiffs' evidence held sufficient for jury as to location of dividing line as contended by them.**

In this action for trespass, the issue in controversy was the location of the dividing line between the respective tracts of the parties. The description in plaintiffs' deeds called for defendants' northern line, and defendants' deeds called for the northern line of their track as beginning at a red oak near the run of a creek. Plaintiffs offered evidence tending to show that the red oak had vanished, leaving no reliable trace of its former location, and that one of defendants' predecessors in title had pointed out, prior to the controversy, a marked white oak and a succession of marked gums as the location of the line, which line was the true dividing line according to plaintiffs' contention. *Held:* Plaintiffs' evidence is sufficient to support a finding by the jury that the disputed area lies within the boundary of the tract admittedly owned by plaintiffs, and it was error for the court to nonsuit plaintiffs' action.

3. **Boundaries § 5d—**

In this action involving the location of a dividing line between the respective tracts of the parties, plaintiffs' witness testified that before dispute as to the dividing line, one of defendants' predecessors in title pointed out to the witness a line of marked trees as the true dividing line. The marked trees established the dividing line as contended for by plaintiffs. The

,trees pointed out were not referred to in the deeds. *Held:* Even though the testimony may not be competent as a declaration concerning a private boundary, it is competent as a declaration against interest made by a former owner of the land during the time of his ownership.

**4. Judgments § 33a—**

A judgment of nonsuit will not support a plea of *res adjudicata* in a subsequent action between the same parties upon substantially different allegations and evidence.

**5. Evidence § 42d: Attorney and Client § 6—**

A casual, hasty or inconsiderate admission made by one of the attorneys for plaintiffs, which admission is in irreconcilable conflict with defendants' admission and the theory of plaintiffs' case, and which is repudiated in express terms by other counsel for plaintiff, is not binding on plaintiffs.

**6. Adverse Possession § 19—**

In this action involving the true dividing line between the respective tracts of the parties, plaintiffs' evidence of adverse possession of the disputed area *is held* sufficient to be submitted to the jury under claim of title by seven years adverse possession under color. G.S. 1-38.

APPEAL by plaintiffs from *Burney, J.,* at October Term, 1953, of PENDER.

Civil action between adjoining landowners involving the location of a tract of land admittedly owned by the plaintiffs.

For ease of narration, Hugh Porter is called by his surname, and all the other defendants are designated as the defendants.

The matters essential to an understanding of the questions arising on the appeal are summarized in the numbered paragraphs which follow.

1. The defendants claim title to a tract of land lying on the east side of Moore's Creek in Columbia Township, Pender County, as heirs of Edmond Newton who died in 1907. Edmond Newton occupied the tract during his lifetime under an unbroken chain of deeds going back to 1850. When they are read aright, these deeds describe the tract in this fashion: *Beginning at a red oak near the run of Moore's Creek, running south 88 east 375 poles to a stake in the back line;* thence south 55 poles to a stake; thence south 88 west 375 poles to a stake in the old line on the west side of Moore's Creek; thence along said line to the beginning, containing 121 acres, more or less.

2. The plaintiffs claim title to a parcel of land which lies immediately north of the tract described in the preceding paragraph. They claim under a connected chain of deeds, which run back to 1884 and describe the land in this wise: Beginning at a black gum, H. Wells' corner, and runs thence his line south 88½ east 350 poles to a stake, his corner, thence south 3 east 78 poles to a stake; thence east 44 poles to a stake; thence 3 west 26 poles to a stake; *thence with Edmond Newton's line north 88 1/2*

*west 380 poles to an oak in Moore's Creek;* thence as the run of said
Creek meanders to the beginning, containing 101.7 acres, more or less.

3. Since the defendants claim under the senior deeds and the plaintiffs'
deeds call for the defendants' northern line as the boundary between the
two tracts of land, the true dividing line between the land covered by the
plaintiffs' deeds and that embraced by the defendants' deeds is necessarily
the defendants' northern line, which is thus defined in their deeds: "Be-
ginning at a red oak near the run of Moore's Creek, running south 88
east 375 poles to a stake in the back line."

4. Shortly before the beginning of litigation, the still subsisting con-
troversy arose between the plaintiffs and the defendants in respect to the
actual location of the true dividing line upon the earth's surface. The
plaintiffs pointed out a large white oak tree standing 138 feet east of
Moore's Creek and a succession of gum-trees, and insisted that they
marked the actual location of the true dividing line. The white oak and
the gums allegedly bore ancient ax-marks indicating that they were line
trees, and marked out a line whose course was virtually identical with the
course of the defendants' northern line as called for in their deeds. The
defendants asserted, however, that the true dividing line was located 224
feet north of the location assigned to it by the plaintiffs.

5. The controversy made it disputable whether the area lying between
the two alleged locations of the true dividing line was embraced by the
deeds of the plaintiffs or those of the defendants. This area consisted of
30 acres, of which 24 acres were woodland. The other 6 acres were old
clearings, which took in the cattle-barn, the tobacco-barn, and the southern
corner of the dwelling of the plaintiffs.

6. After the controversy had arisen, Porter, who acted in the premises
under a license from the defendants, entered on the disputed area, and
cut and removed a substantial part of the timber growing on the 24 acres
of woodland.

7. A short time thereafter, to wit, on 9 November, 1949, the plaintiffs
sued Porter and the defendants in a former action "involving substan-
tially the same subject matter" as the present suit. The pleadings in the
former action were construed, however, to put in issue both the title and
the location of the tract of land described in paragraph 2 of this state-
ment. The former action was heard before Judge Chester Morris and a
jury at the March Term, 1952, of the Superior Court of Pender County.

8. Both sides offered evidence at the trial of the former action. The
testimony of the defendants is not stated because it is not relevant to this
appeal. The plaintiffs introduced two deeds, one dated 4 October, 1943,
and the other dated 3 December, 1942, which were sufficient in form to
afford them color of title to the tract of land described in paragraph 2 of
this statement. The plaintiffs did not show, however, that the makers

of these deeds had had any previous connection of any character with any of the land mentioned in this statement. Moreover, the plaintiffs did not connect their claim with any of the instruments in their chain of deeds antedating the deed of 3 December, 1942. Since their title to the tract of land described in paragraph 2 of this statement was not admitted in the former action, and the two deeds constituting the color of title shown by them at that time were executed within the seven years next preceding the date of the commencement of the former action, the plaintiffs candidly and correctly conceded on the trial of the former action that they were then compelled to base their claim of ownership of the disputed area upon adverse possession without color of title for a period of 20 years under the statute codified as G.S. 1-40. The plaintiffs offered evidence at the trial of the former action tending to show that from 3 December, 1942, the date of the first of the two deeds constituting the color of title then shown by them, until 9 November, 1949, the date of the commencement of the former action, they farmed the 6 acres embraced by the old clearings and took firewood and other materials from the 24 acres included in the woodland under claim of right. Their evidence was not sufficient to show, however, that the requisite privity existed between them and the supposed former occupants, J. M. Newkirk and W. M. Gurganous, who had allegedly possessed the disputed area successively for more than 45 years before the plaintiffs' asserted occupancy began. Judge Morris concluded that the evidence did not permit the tacking of plaintiffs' alleged possession to that of the former occupants, and that for this reason at least the plaintiffs had failed to make out a *prima facie* title to the disputed area by twenty years' adverse possession. As a consequence, Judge Morris dismissed the former action upon a compulsory nonsuit. His ruling was affirmed by this Court at the Fall Term, 1952. *Newkirk v. Porter,* 237 N.C. 115, 74 S.E. 2d 235.

9. Subsequent to these events, to wit, on 23 March, 1953, the plaintiffs brought the present action against Porter and the defendants. The complaint alleged that the plaintiffs owned and possessed the tract of land described in paragraph 2 of this statement; that Porter, acting under license from the defendants, trespassed on the plaintiffs' tract, and cut and removed timber growing upon it; and that Porter and the defendants were about to commit further trespasses upon plaintiffs' tract for the cutting and removal of timber. The complaint prayed for damages for the timber cut and removed, and an injunction to prevent future trespasses. Porter and the defendants filed separate answers, alleging that the defendants owned the tract of land described in paragraph 1 of this statement. The answer of the defendants admitted that the plaintiffs owned "all of that tract of land described in . . . the complaint" lying "north of the northern boundary of the lands of these defendants," and the answer of

Porter conceded that the plaintiffs owned "the tract of land in Columbia Township, Pender County, North Carolina, adjoining the lands of Edmond Newton Estate." Porter's answer admitted that he had cut and removed timber standing on the defendants' land. Both answers denied that Porter had made any entry on the plaintiffs' tract, and pleaded the judgment in the former action as "res adjudicata of all matters and things involved in this action." The defendants prayed for an affirmative declaration that they owned the tract described in paragraph 1 of this statement.

10. The present action was heard by Judge John J. Burney and a jury at the October Term, 1953, of the Superior Court of Pender County. The plaintiffs offered evidence at that time substantially different in material aspects from the testimony presented by them at the trial of the former action. They introduced an unbroken chain of deeds going back to 1884, which were sufficient in form to convey the tract of land described in paragraph 2 of this statement to them in fee simple. The plaintiffs undertook to prove that the true dividing line between that tract and the tract described in paragraph 1 of this statement was delineated on the earth's surface by the marked white oak and the marked gums mentioned in paragraph 4 of this statement, and that their deeds, therefore, covered the disputed area of 30 acres. To this end, the plaintiffs did these things: First, they offered testimony tending to show that the "red oak near the run of Moore's Creek" mentioned in the defendants' deeds had long since vanished leaving no reliable trace of its former location; and, second, they called to the stand W. A. Gurganous, a legally disinterested witness, who testified that his father, W. M. Gurganous, one of those under whom the plaintiffs claim, resided upon and claimed the tract of land described in paragraph 2 of this statement during the boyhood of the witness; that Edmond Newton, under whom the defendants claim, resided upon and claimed the tract of land described in paragraph 1 of this statement at the same time; that there was then no dispute respecting the boundary between the two tracts; that Edmond Newton met the witness in the wooded area shortly before his death in 1907, and told the witness that he wanted to show him "the lines" because he was "getting old" and "old people" did not "live forever"; that Edmond Newton thereupon showed the witness the large marked white oak tree 138 feet east of Moore's Creek and the succession of marked gum-trees, and said "this is the line between me and your father"; and that the witness had known "that line" ever since he was "a kid." The plaintiffs offered other testimony indicating that during November, 1949, Porter entered upon the 24 acres of woodland in the disputed area, and cut and removed valuable timber growing upon them. The plaintiffs introduced additional evidence tending to show that the plaintiffs and those under whom they claimed did

these things successively without cessation or interruption throughout the 55 years next preceding Porter's entry upon the disputed area: (1) That they resided upon the tract described in paragraph 2 of this statement; (2) that they cultivated substantial portions of the tract, including the 6 acres embraced by the old clearings in the disputed area, in corn, cotton, tobacco, and other crops; (3) that they used the remaining portions of the tract, including the 24 acres of woodland in the disputed area, as sources for crossties, fuel, tar, and turpentine; (4) that they did these things openly and publicly to the knowledge of all persons in the vicinity under the claim that they owned the tract in fee simple under their deeds up to the exterior lines called for by those instruments; and (5) that they asserted that the true dividing line between the tract claimed by them and the tract described in paragraph 1 of this statement was delineated on the earth's surface by the large marked white oak 138 feet east of Moore's Creek and the succession of marked gums.

11. When the plaintiffs had introduced their evidence and rested their case, Judge Burney allowed the motion of Porter and the defendants for a compulsory nonsuit, and entered judgment accordingly. The plaintiffs excepted and appealed, assigning the entry of the compulsory nonsuit as error.

*Rountree & Rountree and Wyatt E. Blake for plaintiffs, appellants.*
*Leon H. Corbett and Harry T. Fisler for defendants, appellees.*

ERVIN, J.   When the answers are read aright, they admit the plaintiffs' title to the tract of land described in paragraph 2 of the statement of facts. They merely put the actual location of the true dividing line between the plaintiffs' land and the tract claimed by the defendants in issue by alleging, in essence, that the disputed area is covered by the deeds of the defendants rather than the deeds of the plaintiffs. This being true, it was not obligatory for the plaintiffs to offer evidence sufficient to establish title by adverse possession or otherwise. But it was incumbent upon them to present testimony ample to show that the disputed area lies within the bounds of their tract.  *Williamson v. Bryan,* 142 N.C. 81, 55 S.E. 77.

The true dividing line between the plaintiffs' land and the tract claimed by the defendants is the defendants' northern line, which is thus defined in their deeds: "Beginning at a red oak near the run of Moore's Creek, running south 88 east 375 poles to a stake in the back line."

The plaintiffs assert with complete correctness that the disputed area necessarily lies within the bounds of their tract if the true dividing line is delineated upon the earth's surface by the large marked white oak tree standing 138 feet east of Moore's Creek and the succession of marked gum-trees.

The plaintiffs undertook to prove at the trial that the marked white oak and the succession of marked gums fix the actual location of the true dividing line upon the earth's surface. To this end, the plaintiffs introduced evidence ample to establish these propositions: First, that the "red oak near the run of Moore's Creek" called for by the defendants' deeds had long since vanished from the earth leaving no reliable trace of its former location; and, second, that Edmond Newton, under whom the defendants claim, had declared, in substance, under the circumstances detailed by the witness W. A. Gurganous that the marked white oak and the succession of marked gums disclosed the actual location upon the earth's surface of the dividing line between the land now owned by the plaintiffs and the tract now claimed by the defendants.

This evidence is sufficient to support a finding by a jury that the disputed area lies within the bounds of the tract admittedly owned by the plaintiffs. As a consequence, it was error to nonsuit the action.

To be sure, it may be argued with much force that Edmond Newton's statement falls short of the requirements of the exception to the hearsay rule which admits declarations concerning private boundaries, because it does not refer to a monument of boundary or a natural object called for in the deeds. *Lumber Co. v. Triplett,* 151 N.C. 409, 66 S.E. 343; *Bland v. Beasley,* 140 N.C. 628, 53 S.E. 443. Be that as it may, the statement satisfies the requirements of the independent rule governing admissions by predecessors in interest, which declares that "any statement by a person holding or claiming an interest in property, which could have been used against him in litigation over such interest, is admissible to the same extent and for the same purposes against parties claiming under him." Stansbury on North Carolina Evidence, section 174. Under this independent rule, a declaration against interest made by a former owner of land during the time of his ownership respecting the location of the boundaries of the land is competent against one who claims under him any interest in the land acquired since the declaration was made. *Gray v. Coleman,* 171 N.C. 344, 88 S.E. 489; *Byrd v. Spruce Co.,* 170 N.C. 429, 87 S.E. 241; *Ellis v. Harris,* 106 N.C. 395, 11 S.E. 248; *Cansler v. Fite,* 50 N.C. 424; *Webb v. Hall,* 18 N.C. 278. See, also, in this connection: *Carr v. Bizzell,* 192 N.C. 212, 134 S.E. 462.

In reaching the conclusion that it was error to nonsuit the action, we do not overlook the circumstance that the defendants pleaded the judgment in the former action as *"res adjudicata* of all matters and things involved in this action," or the fact that one of the two lawyers who represented the plaintiffs at the trial made this statement to the presiding judge just before the entry of the nonsuit: "We will stand on adverse possession."

The plea of *res adjudicata* is without merit for the very simple reason that the allegations, the evidence, and the merits of the present action are substantially different from the allegations, the evidence, and the merits of the former action. *Hampton v. Spinning Company,* 198 N.C. 235, 151 S.E. 266.

The trial judge should have ignored the statement of one of the plaintiffs' trial counsel to the effect that the plaintiffs would "stand on adverse possession" as a casual, hasty, or inconsiderate admission not binding the plaintiffs. *Davidson v. Gifford,* 100 N.C. 18, 6 S.E. 718. The statement was in irreconcilable conflict with the defendants' admission of the plaintiffs' title, and the theory of the plaintiffs' case. Moreover, it was repudiated in express terms by the plaintiffs' other trial counsel.

The statement would not have warranted the compulsory nonsuit even if the answers of the defendants had denied the plaintiffs' title to the land embraced by their deeds and thus compelled the plaintiffs to "stand on adverse possession." The plaintiffs offered testimony on the trial of the present action tending to show that their deeds covered the disputed area. This testimony and the other facts in evidence would have sufficed to show that the plaintiffs and those under whom they claim had acquired title to the 30 acres in controversy by adverse possession under color of title for a period of seven years according to the statute embodied in G.S. 1-38 had the answers of the defendants denied the plaintiffs' title to the land embraced by their deeds.

For the reasons given, the compulsory nonsuit is

Reversed.