VERNON WESLEY HILL v. RICHARD B. PARKER, TRADING AS PARKER MOTORS, AND LEON THOMAS.

(Filed 17 September, 1958.)

**1. Pleadings § 28—**

A motion for judgment on the pleadings is in the nature of a demurrer and presents the question whether the facts alleged in the adversary's pleading, together with all fair inferences of fact to be drawn therefrom, taken as true, are sufficient in law to constitute a cause of action or defense.

**2. Same—**

Defendant's motion for judgment on the pleadings is improperly granted if the complaint in any respect or to any extent is sufficient to state a cause of action.

**3. Same: Sales § 27-Complaint held sufficient to state cause of action for breach of express warranty.**

Plaintiff's allegations were to the effect that defendants represented that the car purchased by plaintiff was in first class condition and new except for slight use as a demonstrator, that in fact the car had been involved in a wreck resulting in permanent damage to the vehicle, that the representations as to the condition of the vehicle were false, made with knowledge of their falsity for the purpose of inducing the plaintiff to purchase the vehicle, and that plaintiff in fact relied upon the representations to his damage, and that the conditional sale contract, signed in blank by plaintiff, was filled in as to the purchase price and allowance for trade-in, in figures at variance with the oral agreement of the parties, etc. *Held:* The complaint is sufficient to state a cause of action for breach of express warranty, and therefore defendant's motion for judgment on the pleadings was erroneously allowed, irrespective of whether the complaint was sufficient to allege also a cause of action for false warranty, or for failure of consideration, or for rescission.

**4. Same: Attorney and Client § 3—**

Where a complaint is sufficient to allege one cause of action, the fact that plaintiff's attorney stated that the nature of the cause of action was for a relief not supported by the allegations, does not justify the granting of defendant's motion for judgment on the pleadings.

PARKER, J., took no part in the consideration or decision of this case.

APPEAL by plaintiff from *Parker, J.,* at March 10, 1958, Civil Term, of CARTERET.

*Charles W. Stevens for plaintiff, appellant.*
*C. R. Wheatly, Jr., for defendants, appellees.*

JOHNSON, J.　Civil action to recover damages for alleged wrongs committed by the defendants in connection with the sale of an automobile to the plaintiff. After the jury was empaneled and the pleadings were read, the court upon inquiry was informed by the plaintiff's attorney that the action "is brought for rescission" of the conditional sale contract. Thereupon counsel for the defendants moved for judgment on the pleadings. The motion was allowed and the action was dismissed. The question for decision is whether this ruling was correct.

"A motion for judgment on the pleadings is in the nature of a demurrer. . . . Its function is to raise this issue of law: Whether the matters set up in the pleading of an opposing party are sufficient in law to constitute a cause of action or a defense. . . . When a party moves for judgment on the pleadings, he admits these two things for the purpose of his motion, namely: (1) The truth of all well-pleaded facts in the pleading of his adversary, together with all fair inferences to be drawn from such facts; and (2) the untruth of his own allegations in so far as they are controverted by the pleading of his adversary." *Erickson v. Starling,* 235 N.C. 643, 656, 71 S.E. 2d 384, 393. "Moreover, if good in any respect or to any extent, a plea will not be overthrown by motion for judgment on the pleadings." *Burton v. Reidsville,* 240 N.C. 577, 581, 83 S.E. 2d 651, 654.

Here, then, the defendants' motion for judgment on the pleadings has put to test the legal sufficiency of the complaint to state a cause of action.

These in pertinent part are the crucial facts alleged by the plaintiff:

"2. That the defendant Richard B. Parker . . . is now, and was at the times hereinafter alleged, trading and doing business under the name of Parker Motors.

"4. That on the 14th day of January 1956 the defendant Parker Motors, through its co-defendant Leon Thomas, who was duly authorized to and was acting as agent and salesman for Richard B. Parker, trading as Parker Motors, offered to sell and the plaintiff agreed to buy a new Ford 1956 Parklane Tudor Wagon . . . with all equipment and extras attached thereto at the time, at a stipulated and agreed price of $2797.53, with a credit thereon of $1249.15 for a 1956 Ford Truck . . . traded and delivered to the defendant Parker Motors by

the plaintiff as down payment on the purchase price of the Ford Parklane Tudor motor vehicle above referred to, and the balance of $1548.38 to be financed in equal monthly installments, and the plaintiff agreeing to pay the usual and customary costs of financing the balance due.

"5. That the defendants, prior to concluding the above stated transaction, and as a direct inducement for the plaintiff to buy, expressly stated to the plaintiff that the . . . Motor Vehicle above described was a new 1956 model and in A#1 condition, and had only been operated by the defendants as a demonstrator for a short time, and upon the further representation by the defendants that said . . . Motor Vehicle was fully warranted and guaranteed against defects in workmanship and material for a period of Ninety (90) days or 4,000 miles, the plaintiff accepted delivery of same and undertook to conclude the transaction as outlined in Paragraph 4 of this complaint.

"6. That the plaintiff, at the time of purchasing the Parklane Tudor Motor Vehicle (it being Saturday afternoon) advised the defendants he (plaintiff) was contemplating leaving the following Monday for a trip to New York, that he desired to drive the motor vehicle on the trip and would be out of the County, and away from home, for some little time, whereupon, the defendants, without filling out and completing the Conditional Sales Contract at the time and in accordance with the agreement enumerated in paragraph 4 of this complaint, requested the plaintiff to sign the . . . Contract in blank, the defendants assuring the plaintiff that the . . . Contract would be filled out in all respect to conform to the agreement as aforesaid, and that plaintiff would receive a copy of the transaction on his return to Carteret County, and relying on said assurances and representations of the defendants, the plaintiff signed the . . . Contract in blank and delivered same to the defendants.

"7. That while driving the said Parklane Tudor motor vehicle to New York and return the plaintiff noticed a swing or disalignment of the rear end thereof . . . nevertheless, plaintiff continued on his trip and shortly thereafter returned to his home in Carteret County; that the swing and disalignment of the rear end of the motor vehicle . . . was gradually becoming worse, and was causing the tires thereon to wear out beyond any usual and ordinary degree, and out of all proportion to that caused by ordinary and usual driving.

"8. That promptly after returning to Carteret County, the plaintiff drove the motor vehicle . . . to the garage owned and operated by the defendant Parker Motors and described in detail to Richard B. Parker the defects then apparent to plaintiff, whereupon the plaintiff was in-

formed by said Parker that all proper adjustments and alignments would be made to said motor vehicle and that everything would be all right.

"9. That the plaintiff continued to have trouble with the rear end of the motor vehicle in question, and after several trips to the garage of Parker Motors, and after several promises by Richard B. Parker that everything would be adjusted to plaintiff's entire satisfaction, the defects have gradually grown worse instead of better, and said . . . motor vehicle since delivery to plaintiff has never operated . . . as a new motor vehicle in A#1 condition should operate, and the plaintiff alleges that as a new motor vehicle it is now and has been worthless since its delivery to plaintiff.

"10. That later, after returning home from New York, the plaintiff, not having received copy of the transaction entered into on the 14th day of January 1956, made inquiry of Parker Motors (at its office) as to why plaintiff had not received copy of the transaction, and was given a 'Car Invoice' by Parker Motors showing the listings thereon to be wholly and totally at variance with the agreement made covering the transaction of January 14, 1956. . . .

"11. That having received the 'Car Invoice' aforesaid, the plaintiff became suspicious and upon further inquiry, discovered that the defendants, without the knowledge or consent of the plaintiff, had schemingly, wrongfully and fraudulently filled out the blank spaces of the Conditional Sales Contract, which the plaintiff had signed in blank on the 14th day of January 1956, to represent a sales price for said Ford Parklane Motor Vehicle of $3103.72, with a credit thereon of only $1092.84 for the Ford Truck traded in by plaintiff, which sum of $1092.84 was credited by defendants to the balance due on said Ford truck instead of a down payment, whereas, the total sales price as agreed upon at the time the transaction was consummated on January 14th 1956 was $2797.53, with a trade-in allowance on said Ford Truck of $1249.15, and plaintiff is advised, informed, believes and alleges that said . . . Contract, with the incorrect figures placed therein, was, on the 16th day of January 1956, or a few days thereafter, delivered and transferred by Parker Motors to the First-Citizens Bank & Trust Company, of Morehead City, who purchased the same, and as plaintiff is advised and believes the said Bank became a holder thereof in due course and for value.

"12. That immediately after plaintiff discovered that the Conditional Sales Contract had wrongfully been filled out by the defendants as aforesaid, at a whole and total variance with the original contract of purchase and sale of January 14, 1956, the plaintiff contacted

Richard B. Parker and asked for an explanation for the divergence and variance from the sales agreement as originally made, whereupon, plaintiff . . . was informed by Richard B. Parker that the Bank held the papers, but that the whole transaction would be properly adjusted with the plaintiff to his . . . entire satisfaction, which the defendant . . . Parker, or his co-defendant . . . Thomas, have failed to do.

"13. That the plaintiff having received notice from the First-Citizens Bank & Trust Company, Morehead City, that it held the Conditional Sales Contract, and fully relying on the defendants to adjust the matter to conform to the original contract, made payments to the said Bank totaling $437.00, but on account of the things hereinbefore and hereinafter alleged, the plaintiff refused to make any further payments on the . . . Contract, whereupon, the Bank demanded possession of the . . . Motor Vehicle under the terms of said . . . Contract, and the . . . vehicle described therein was delivered by the plaintiff to the Bank as holder in due course and for value, to forestall claim and delivery proceedings threatened by the Bank against the plaintiff for the possession of said motor vehicle.

"14. That the defendants, prior to the consummation of the contract of sale on January 14, 1956, falsely and fraudulently represented to the plaintiff that the Ford Parklane Tudor Motor Vehicle was a new 1956 model and in A#1 condition; that as a demonstrator it had been properly adjusted in all respects and only slightly and moderately used by the defendants as a demonstrator; that said representations were in fact false, and were made by both defendants with their full knowledge of their falsity, and for the express purpose of inducing the plaintiff to purchase said motor vehicle; that plaintiff in fact believed and relied upon the representations as aforesaid of the defendants and purchased said motor vehicle believing it to be new and in A#1 condition.

"15. That said Ford Parklane Tudor Motor Vehicle was not at the time of purchase by the plaintiff a new motor vehicle, nor was it in A#1 condition either materially or mechanically, as expressly represented by the defendants; that said motor vehicle while in the possession of the defendants, and prior to consummation of the sale to plaintiff on January 14, 1956 the said motor vehicle had been in a wreck or collision by being driven backward by one of Parker Motors salesmen or agents into a steel or iron post, causing serious and permanent damages to the rear end and side, pushing the lefthand rear fender into the body and buckling the body to the door, permanently damaging the left side of the body, knocking one of the rear lights off, also ruining the rear bumper requiring new bumper and rear lights, and causing inability to raise or lower the rear lefthand window glass.

and otherwise seriously and permanently damaging said motor vehicle, thereby necessitating the placing of said motor vehicle in a body repair and paint shop and garage by the defendants for extensive repairs and new paint job on the lefthand side, and thereafter forever taking said motor vehicle out of the new car class, all of which was peculiarly known to the defendants, and without any knowledge thereof on the part of the plaintiff until sometime after he had made the purchase, as said defects were latent, and not visible to any casual observer, but said defendants carefully and schemingly undertook to camouflage all the defects with the express purpose and desire to show off said motor vehicle as a new one.

"16. That on account of the acts, words and conduct of the defendants, . . . there has been a total failure of consideration on account of the plaintiff failing to receive a new motor vehicle in A#1 condition, and thereby the plaintiff has sustained actual damages in the sum of $1686.15; that on account of the acts, words and conduct of the defendants, . . . the plaintiff has sustained special damages for loss of time, inconvenience, vexation, embarrassment, humiliation, and otherwise in the sum of $1,000.00; . . . ."

It is manifest that the plaintiff has alleged a cause of action for damages for breach of express warranty. *Potter v. Supply Co.*, 230 N.C. 1, 51 S.E. 2d 908; *Walston v. Whitley & Co.*, 226 N.C. 537, 39 S.E. 2d 375; *Hodges v. Smith*, 158 N.C. 256, 73 S.E. 807; *Wrenn v. Morgan*, 148 N.C. 101, 61 S.E. 641. This being so, we are not concerned with whether the complaint also superadds a cause of action for false warranty. See *Vaughan v. Exum*, 161 N.C. 492, 77 S.E. 679; *Machine Co. v. McKay*, 161 N.C. 584, 77 S.E. 848. See also *Wrenn v. Morgan, supra;* 46 Am. Jur., Sales, Sec. 734. Nor are we concerned with whether the complaint alleges other causes of action, including one based on total failure of consideration on the hypothesis that the automobile was worthless and unfit for the purpose for which it was sold. *Pool v. Pinehurst, Inc.*, 215 N.C. 667, 2 S.E. 2d 871; *Williams v. Chevrolet Co.*, 209 N.C. 29, 182 S.E. 719; *Swift & Co. v. Aydlett*, 192 N.C. 330, 135 S.E. 141.

It may be conceded that the complaint fails to state a cause of action for rescission. See *Machine Co. v. Bullock*, 161 N.C. 1, bot. p. 11, 76 S.E. 634, 638; *Machine Co. v. Feezer*, 152 N.C. 516, 67 S.E. 1004; *May v. Loomis*, 140 N.C. 350, bot. p. 358, 52 S.E. 728, 731. Even so, the fact that the plaintiff's attorney stated that the action is one "for rescission" does not on this record justify dismissal on motion for judgment on the pleadings. Where, as here, a good cause of action is alleged and the plaintiff has not been put to an election, an inexact designation by his attorney of the nature of the cause of action will

not be treated as ground for dismissal. *Bailey v. McGill,* 247 N.C. 286, 100 S.E. 2d 860. See also *Newkirk v. Porter,* 240 N.C. 296, 82 S.E. 2d 74; *S. v. Barley,* 240 N.C. 253, 81 S.E. 2d 772.

The judgment below is
Reversed.

PARKER, J., took no part in the consideration or decision of this case.