JULIUS J. GWYN, Ancillary Administrator of the Estate of CHARLES
H. WOODRUFF, Deceased, v. LUCKY CITY MOTORS, INC., and
FORD MOTOR COMPANY.

(Filed 16 March, 1960.)

**1. Automobiles § 5:   Sales § 30—**

The manufacturer of a truck is under duty to the ultimate purchaser,
irrespective of contract, to use reasonable care in the manufacture of
the article and to make reasonable inspection so as not to subject the
purchaser to injury from a hidden or latent defect.

**2. Trial § 21—**

Upon a motion to nonsuit the court does not pass upon the weight
or credibility of the evidence, but is required to determine only whether
there is any evidence sufficient to make out plaintiff's cause of action.

**3. Automobiles § 5: Sales § 30— Evidence held for jury on question of
manufacturer's liability for injury from latent defect.**

Evidence tending to show that intestate purchased a new vehicle man-
ufactured by defendant, that the vehicle was equipped with a "one-
piece" check valve in the master cylinder brake assembly, which render-
ed the brakes inoperative if the driver suddenly applied the brakes,
that after having trouble with the brakes for this reason, intestate took
the vehicle to an authorized dealer for repairs, and that thereafter the
brakes failed in the same manner, causing the vehicle to roll back-
wards down a steep incline, resulting in fatal injury to intestate, to-
gether with further evidence tending to show that after the repairs
the master brake cylinder was still equipped with a "one-piece" check
valve and that no other mechanic had made any repair to the brakes,
*is held* sufficient to overrule nonsuit in an action against the manufac-
turer for the wrongful death of intestate.

**4. Same— Liability of manufacturer for latent defect held not insulated
by failure of repairman to remedy the defect.**

The negligence of the manufacturer in equipping a vehicle with a
"one-piece" check valve in the master brake cylinder so that the brakes
would not operate if suddenly applied, a "two-piece" check valve being
necessary for the proper operation of the brakes in such circumstances,
is not insulated as a matter of law by the intervening act of a mechanic
repairing the brake assembly in failing to replace the "one-piece" check
valve, there being no evidence that the mechanic had knowledge or notice
that the malfunctioning of the brakes was caused by the presence of the
"one-piece" check valve within the brake assembly, and there being no
break in the chain of causation set in motion by the negligence of the
manufacturer.

**5. Same— Malfunctioning of brakes held not to constitute notice as a
matter of law of a latent defect in the brake assembly.**

The evidence tended to show that the brakes of the vehicle in ques-
tion would not operate if the brakes were suddenly applied because of
a "one-piece" check valve in the master brake assembly, a "two-piece"

check valve being necessary to the proper operation of the brakes under such circumstances. *Held:* The fact that the purchaser, after having had trouble with the brakes for this reason and after having had the brakes of the vehicle repaired by a mechanic, who failed to replace the "one-piece" check valve, continued to drive the vehicle does not constitute contributory negligence as a matter of law, there being no evidence that the driver had knowledge that the malfunctioning of the brakes was due to the presence of a "one-piece" check valve in the brake assembly.

APPEAL by plaintiff from *Preyer, J.*, March Term, 1959, of ROCKINGHAM, docketed and argued as No. 665 at Fall Term, 1959.

Civil action instituted December 13, 1957, to recover damages on account of the death on June 13, 1957, of plaintiff's intestate, hereafter called Woodruff, allegedly caused by the negligence of defendants.

The complaint, summarized in part and quoted in part, alleged:

On or before February 21, 1957, an authorized dealer of Ford Motor Company sold and delivered to Woodruff a new 1957 Ford three-quarter ton pickup truck, serial No. F25K7N12773, manufactured by Ford Motor Company. As so manufactured, sold and delivered, the truck "was equipped with a master cylinder assembly, which transmitted the pressure from the foot pedal to the hydraulic main braking system, which said master cylinder assembly was of improper design, improperly assembled, and which contained a hidden defect in that the check valve therein would fail, on occasion, to open, thus jamming the master cylinder so that no pressure would be applied to the wheel brakes when an application was desired."

In April, 1957, Lucky City Motors, Inc., "the authorized dealer and service representative of said defendant, Ford Motor Company, acting as the agent and servant of said defendant, Ford Motor Company, as its instrumentality for the performance of the obligations of the defendant, Ford Motor Company, under its warranty issued to said intestate when said vehicle was purchased, assumed the duty of correcting said braking malfunctioning, and, in the course of the performance of said duty inspected said vehicle, and replaced a portion of the master cylinder assembly using parts furnished by said defendant, Ford Motor Company, and following the procedures outlined by it, which said replacement did not correct the hidden defect in said assembly."

Woodruff relied upon "the implied representations of said defendant, Lucky City Motors, Inc. that it had corrected said difficulty in accord with the standard service warranty and procedures of the defendant, Ford Motor Company, (and) continued to use said vehicle."

On June 13, 1957, Woodruff, "while backing this said vehicle on a public street in the Town of Marshall, Madison County, North Carolina, sought to apply the brakes thereon, which said brakes utterly failed as a result of the defects hereinbefore mentioned, with the result that said vehicle went backwards over a steep embankment and crashed at the bottom thereof, . . . causing his near instantaneous death, . . ."

The combined and concurring negligence of defendants, in particulars set forth, proximately caused the said failure of the brakes, the resulting death of Woodruff and damage to the truck, for which plaintiff alleged damages of $100,000.00 for Woodruff's death and of $2,100.00 for the damage to the truck.

Defendant Ford Motor Company, answering, admitted "that Ford trucks are equipped with a master cylinder assembly." It asserted it had no knowledge of the truth or falsity of the allegations relating to Lucky City Motors, Inc., and denied such allegations upon information and belief. It denied specifically (1) "that the Lucky City Motors, Inc. was a service representative or agent or servant of the defendant, Ford Motor Company," and (2) "that the Ford Motor Company ever issued any warranty to plaintiff's intestate." Except as otherwise indicated, there was a general denial of plaintiff's allegations. As a further defense, it pleaded Woodruff's contributory negligence in particulars set forth, in bar of plaintiff's right to recover.

The answer of Lucky City Motors, Inc., is not in the record.

At the close of plaintiff's evidence, each defendant moved for judgment of nonsuit. These motions were overruled. Thereafter, evidence was offered by Lucky City Motors, Inc. Ford Motor Company did not offer evidence. No further evidence was offered by plaintiff.

At the close of all the evidence, each defendant moved for judgment of nonsuit. The motion of Lucky City Motors, Inc., was then overruled. The jury was dismissed "over the weekend after being given the usual cautions."

The court reserved its ruling on Ford Motor Company's motion "until Monday, March 9, 1959," at which time the court entered judgment nonsuiting plaintiff and dismissing plaintiff's action as to Ford Motor Company. This judgment contains no reference to Lucky City Motors, Inc. Nothing in the record indicates what, if anything, thereafter occurred in respect of plaintiff's action against Lucky City Motors, Inc. Lucky City Motors, Inc., is not a party to this appeal.

This appeal by plaintiff is from said judgment of involuntary nonsuit as to Ford Motor Company.

*Ernest R. Taylor, Herbert M. Bacon, Price & Osborne and Allen, Henderson & Williams for plaintiff, appellant.*

*Brown, Scurry, McMichael & Griffin and D. Leon Moore for Ford Motor Company, appellee.*

BOBBITT, J. Whether the evidence, when considered in the light most favorable to plaintiff, was sufficient for submission to the jury as to the alleged negligence of Ford Motor Company, is the question for decision.

It was stipulated that the 1957 Ford pickup truck was manufactured by Ford Motor Company; that it was purchased by Woodruff from Crowell Long Auto Company, Inc., of Danville, Virginia, an authorized Ford dealer, on or about February 21, 1957; and that, when sold and delivered to Woodruff, it was a new truck.

Our consideration of the evidence is directed principally to plaintiff's allegation that Ford Motor Company was negligent in that it manufactured and delivered to its authorized dealer for sale a 1957 truck equipped with defective hydraulic brakes. (Note: Plaintiff also alleged negligence on the part of Lucky City Motors, Inc., and that Ford Motor Company was responsible therefor under the doctrine *respondeat superior.*)

"The over-whelming weight of authority is to the effect that the manufacturer of a truck, like the one here in question, owes a duty to the public, irrespective of contract, to use reasonable care in its manufacture and to make reasonable inspection of the construction in the plant where the truck was manufactured." *General Motors Corporation v. Johnson,* C.C.A. (4th), 137 F. 2d 320; *MacPherson v. Buick Motor Co.,* 217 N.Y. 382, 111 N.E. 1050, L.R.A. 1916F 696, Ann. Cas. 1916C 440; 5 Am. Jur., Automobiles § 350; 60 C.J.S., Motor Vehicles § 165; Annotations: 156 A.L.R. 479; 164 A.L.R. 569, 584.

We find no North Carolina decision in which an injured party has recovered against the manufacturer of an automobile on account of negligence in the construction and assembly thereof. However, in a case where the evidence was held insufficient, plaintiff's right to recover was tested by the rule stated above. *Harward v. General Motors Corp.,* 235 N.C. 88, 68 S.E. 2d 855. Also, see *Jones v. Chevrolet Co.,* 217 N.C. 693, 9 S.E. 2d 395, and *Hudson v. Drive It Yourself, Inc.,* 236 N.C. 503, 73 S.E. 2d 4.

Appellee does not question the applicability of the general rule stated above, but rightly refers to *MacPherson v. Buick Motor Co., supra,* as a landmark decision. Rather, appellee asserts the present case is factually distinguishable in that (1) the plaintiff in *MacPherson*

had no notice of the defect in the wheel prior to the accident, and (2) there was no intervention by a third party "such as the intervention by Lucky City Motors in this case."

Decision requires an analysis of the evidence. In testing the sufficiency thereof, we are mindful of this well established rule: "If there is any evidence, more than a scintilla, the judge should allow the case to go to the jury, since he is not to consider the weight of the evidence, but whether there is any evidence sufficient for the jury to consider." McIntosh, North Carolina Practice and Procedure, § 565, p. 615, and cases cited.

Woodruff was an itinerant "spray painter." He worked by the job. He went from house to house in search of jobs. He would stay in one territory "until he worked out" and then move to another. In each territory he would establish a temporary place of residence and work out from such place.

In February, March and April, 1957, Woodruff lived, with his wife, children, and other members of the family, in Ruffin, N. C. Banell Small, a brother of Woodruff's wife, then a 14-year old boy, lived as a member of this family group. About May 1, 1957, Woodruff moved from Ruffin to Morristown, Tennessee.

Plaintiff's evidence as to what occurred prior to and on the occasion of the fatal accident consists of the testimony of Banell Small.

Banell Small testified that he was with Woodruff when the 1957 truck was delivered in Danville; that he helped Woodruff in his work when he operated out from Ruffin and later when he operated out from Morristown; that he was with Woodruff on April 17, 1957, when the truck was taken to Lucky City Motors, Inc., in Reidsville, to have the brakes fixed; and that he was with Woodruff in Marshall, N. C., on June 13, 1957, when the fatal accident occurred. Banell Small's testimony also tends to show the facts stated in the following two numbered paragraphs.

1. On June 13, 1957, Woodruff, driving the 1957 truck and accompanied by Banell Small, left Morristown for Marshall. In Marshall, about noon, they went to the house of one Everett Barnett. In so doing, they traveled (north) up a mountain road (ten or eleven feet wide), referred to as Hill Street. Barnett's private driveway ("just room enough for one vehicle") extended (east) from Hill Street, down the mountain. The grade on Hill Street and on Barnett's driveway was steep. On the west side of Hill Street, opposite the entrance to the Barnett driveway, there was a bank, that is, the side of the mountain.

2. In leaving the Barnett house, Woodruff drove up the driveway

and onto and across Hill Street. He stopped when the front bumper hit the bank on the far (west) side, being unable to make the turn into Hill Street without backing. When the truck was still in "low, low gear," with the engine running, it started to roll back toward the east edge of Hill Street. When this occurred, Woodruff "stomped" the brakes. The brakes "froze" and failed to take effect. The truck rolled back over the east edge of Hill Street, down the side of the mountain toward the Barnett house, turned over and fell against an apple tree, and Woodruff was "pinned in" in such manner as to cause his death.

On this phase of the case, we must conclude that plaintiff's evidence was sufficient to require submission for jury determination whether the failure of the brakes proximately caused the fatal accident.

After the fatal accident, the Woodruff truck was removed to the warehouse of Service Motor Sales in Marshall. There was evidence that nothing was done to the truck in respect of brakes or otherwise prior to July 29th, the date the truck was sold to Mr. Derwood Trent of Morristown. Trent drove the Woodruff truck from Marshall to Morristown. As to what occurred on this trip, Trent testified: "I found if I would hit the brake real suddenly I had no brake at all, just like a hard pedal that wouldn't release at all. If I released the pedal gradually, applied small pressure on it, it would depress. In other words, I mean if you stamped them all of a sudden, the pedal would stay firm and not depress. If you applied the brakes gradually, you had a brake."

There was testimony by Trent and by John Self, Trent's mechanic, as to tests made in respect of the brakes on the Woodruff truck. In short, their testimony tended to show that the master (brake) cylinder assembly was defective in that it contained a "one-piece" check valve instead of the "two-piece" check valve called for by the 1957 Ford Manual. Their testimony tended to show that, after purchasing a 1957 brake assembly "kit" from the Ford dealer in Morristown, they replaced the "one-piece" check valve with a "two-piece" check valve and after doing so the hydraulic brakes worked perfectly. According to their testimony, when the "one-piece" check valve was used, the brake would operate satisfactorily if gradually applied but "on sudden application" the outlet for the brake fluid would completely close and the fluid would not reach the brake cylinders in the wheels of the truck.

On this phase of the case, we must conclude that there was evidence sufficient to support findings that the master cylinder assembly in Woodruff's truck on June 13, 1957, contained a "one-piece" check

valve, and that this "one-piece" check valve rendered the brakes inoperative if the driver suddenly applied or "stomped" the brakes. In this connection, it is noted that the evidence offered by Lucky City Motors, Inc., tends -to show that a master cylinder assembly for a 1957 truck should have a "two-piece" check valve as one of its component parts.

The question arises: Did the master cylinder assembly in Woodruff's 1957 truck contain a "one-piece" check valve when delivered by Ford Motor Company to the Danville dealer from whom it was purchased by Woodruff? To answer this question, we consider the evidence as to what occurred prior to and on April 17th, the date Woodruff took the truck to Lucky City Motors, Inc., to have the brakes fixed. As to this, the testimony of Banell Small and the testimony of James V. Lassiter, Jr., then the Service Manager for Lucky City Motors, Inc., a witness for Lucky City Motors, Inc., is in conflict, particularly with reference to what was wrong with the brakes when Woodruff took the truck to Lucky City Motors, Inc., on April 17th.

Banell Small testified: "In between the time that the new Ford truck was delivered to him (Woodruff) and April 17, when you hit the brakes real hard, they would freeze, wouldn't go down; like you'd be going along and hit them suddenly, they just wouldn't stop, wouldn't hold at all, just freeze." This was first noticed, according to Banell Small, a week or so after the 1957 truck was delivered to Woodruff, when, approaching a red light, Woodruff "stomped on the brakes" and they just "went right on." According to Banell Small, when the truck was taken to Lucky City Motors, Inc., on April 17th, Woodruff "told them how the brakes was acting, how when he hit it they wouldn't hold, would just freeze, and stuff like that."

On the other hand, Lassiter testified that Woodruff's complaint on April 17th was: "My brakes are locking up; I can't drive it on the road." Lassiter testified: "The brakes was locking up. He had too much brakes; he couldn't drive it. . . . After getting in it I tried the brakes and it would not move without putting it in low gear and barely moved then. . . . He said in applying the brakes they seemed to get tighter and tighter until it stopped."

As to what was done by Lucky City Motors, Inc., on April 17th, Banell Small testified: "He (the mechanic) took the master cylinder off, the brake thing and tore it down." Again: He ". . . tore the master cylinder, fixed a part and put it back on, and we drove on out with it." Again: "I don't know what they put in it or what they didn't." Lassiter's testimony was to the effect that Woodruff's use of improper

brake fluid had caused the damage to certain component parts of the brake assembly; and that, among other repairs and replacements, he removed a "two-piece" check valve from the brake assembly and replaced it with another "two-piece" check valve.

True, if Lassiter's testimony is accepted, the "one-piece" check valve in Woodruff's truck on June 13, 1957, was put there by some person and on some occasion not disclosed by the evidence. Indeed, Lucky City Motors, Inc., offered a witness who testified that on June 13, 1957, in Marshall, Woodruff's truck had defective brakes; and that, when the witness cautioned Woodruff to have the brakes fixed, Woodruff replied that he had "had these brakes worked on two or three times." Yet Banell Small testified that Woodruff had had no trouble with the brakes from April 17th to June 13th; that he had been with him constantly on all occasions when Woodruff had driven the truck; and that no work had been done on the brakes by anybody after April 17th.

Appellee contends: *If* a "one-piece" check valve was in the brake assembly on June 13, 1957, and *if* nothing had been done to the brakes from April 17th to June 13th, the only inference to be drawn is that the "one-piece" check valve was put in the brake assembly by Lucky City Motors, Inc. It is noted that this contention runs counter to the testimony of Lassiter. The jury was at liberty to accept or to reject, in whole or in part, Lassiter's testimony. Whether Lassiter removed a "two-piece" check valve from the brake assembly was for jury determination.

If the evidence most favorable to plaintiff is accepted, the brake failure on June 13th was precisely the same in character as the brake failures prior to April 17th, and the cause of the brake failure on June 13th was the fact that a "one-piece" check valve instead of the "two-piece" check valve was a component part of the brake assembly. When all inferences are drawn in favor of plaintiff, the evidence was sufficient to permit a finding that the "one-piece" check valve in the brake assembly on June 13th was in the brake assembly when the 1957 truck purchased by Woodruff was delivered by the manufacturer to its dealer in Danville.

Even so, appellee contends the original liability of Ford Motor Company, if any, ended upon discovery of the defect prior to April 17th; and that, with knowledge of such defect, Woodruff had the truck inspected and repaired by Lucky City Motors, Inc. Here, appellee relies largely upon *Harley v. General Motors Corp.,* 97 Ga. App. 348, 103 S.E. 2d 191, where it is said: "In the instant case, the plaintiff's father discovered the defective condition of the accelera-

tor rod before it had caused any injury and at the discovery thereof, the defective condition of the accelerator rod ceased to be a latent defect. Once the defect was discovered and the dangerous condition of the defective machine became apparent, that discovery insulated the manufacturer from any damages resulting from its manufacture of a latently defective machine." Suffice to say, if the brake assembly placed in the 1957 truck by Ford Motor Company contained a "one-piece" check valve, we cannot say as a matter of law that the mere fact that Woodruff discovered (prior to April 17th) that his brakes were not working satisfactorily is sufficient to absolve Ford Motor Company from liability. There is no evidence that Woodruff had knowledge or notice that the malfunctioning of the brakes was caused by the presence, within the brake assembly, of a "one-piece" check valve. In short, the cause of the hazard was not obvious but concealed. Compare, *Tyson v. Manufacturing Co.*, 249 N.C. 557, 107 S.E. 2d 170.

Here the alleged negligence of Ford Motor Company was the use of a "one-piece" check valve as a component part of the brake assembly on Woodruff's 1957 truck. There was evidence that the brake assembly used on certain Ford trucks and cars for 1956 (models) and prior years contained a "one-piece" check valve.

This question arises: If Lucky City Motors, Inc., was negligent, either in its failure to discover or to remedy the defect, did such negligence intervene and supersede the original negligence of Ford Motor Company? Without appraising the sufficiency of the evidence to establish negligence on the part of Lucky City Motors, Inc., it is enough to say it does not establish negligence on its part as a matter of law.

The doctrine of intervening (insulating) negligence has been discussed in many cases. For a full discussion, see *Hayes v. Wilmington*, 243 N.C. 525, 540, 91 S.E. 2d 673, and cases cited. If, as manufactured by Ford Motor Company, the brake assembly had a "one-piece" check valve in it, and this was permitted to remain therein by Lucky City Motors, Inc., there was no break in the chain of causation set in motion by the negligence of Ford Motor Company. Too, we cannot say as a matter of law that Ford Motor Company could not have reasonably anticipated that a mechanic, undertaking to repair the brakes, would not permit to remain in the brake assembly a "one-piece" check valve put there by the manufacturer.

In *Pierce v. Motor Co.* (C.C.A. 4th), 190 F. 2d 910, 913, (S. c., *Ford Motor Co. v. Mahone*, 205 F. 2d 267), *Parker, Chief Judge*, said: "It is argued that any negligence of the manufacturer in turning out a defective car is insulated by that of a mechanic who inspects it afterwards so that the latter will be deemed the proximate cause of any

injury resulting from its defective condition; but this argument is entirely without merit. As said in Harper on Torts ch. 7 sec. 106, quoted in *Foley v. Pittsburgh-Des Moines Co.,* 363 Pa. 1, 68 A. 2d 517, 529: 'A negligent defendant can not escape liability because of a failure on the part of some third person to perform an affirmative duty which, if properly performed, would have enabled the plaintiff to avoid the risk created by the defendant's negligence. The failure of the other to inspect adequately may make him liable to the party harmed, but it will not relieve the defendant whose negligence was responsible for the hazard in the first place.' "

Careful consideration of the evidence raises many doubts as to (1) whether the fatal accident was caused by failure of brakes or by backing off the edge of the mountain road, (2) whether the alleged defect was not of such nature that Woodruff, in his extensive travels, became fully aware thereof between April 17th and June 13th, and (3) whether Woodruff had not had the brakes worked on on one or more occasions after April 17th at times and under circumstances not disclosed by the evidence. But a decision adverse to plaintiff would require that we weigh the evidence, particularly the testimony of Banell Small. The credibility of the witnesses and the weight of the evidence are for jury determination.

As to contributory negligence, it is enough to say that the evidence does not suffice to establish contributory negligence on the part of Woodruff as a matter of law.

We do not reach the question as to whether the evidence was sufficient to support a finding that Ford Motor Company was liable for the negligence, if any, of Lucky City Motors, Inc., under the doctrine *respondeat superior.*

Under the circumstances disclosed by the record, we refrain from comment on the present status of the action as between plaintiff and Lucky City Motors, Inc.

The judgment of involuntary nonsuit as to Ford Motor Company is reversed.

Reversed.