## NATIONWIDE MUTUAL INSURANCE COMPANY v. DON ALLEN CHEVROLET COMPANY.

(Filed 2 November, 1960.)

**1. Pleadings § 12—**

Upon demurrer for failure of the complaint to state a cause of action, the complaint will be liberally construed in plaintiff's favor.

**2. Insurance § 53—**

An insurer paying the loss to the insured owner of the chattel acquires only such rights by subrogation as the insured had.

**3. Sales § 14—**

Any affirmation by the seller which has a natural tendency to induce the buyer to purchase the goods, and which the buyer relies on in purchasing the goods, constitutes an express warranty.

**4. Sales § 24—**

Breach of express warranty entitles the buyer at his election to rescind the sale, but retention of the goods by the buyer after he discovers or has reasonable opportunity to discover the defects precludes the right of rescission.

**5. Sales § 26—**

Upon breach of warranty as to quality, the buyer, at his election, may retain the goods and sue for damages.

**6. Same—**

The measure of damages for breach of warranty as to quality is the difference between the reasonable market value of the article as warranted and as delivered, together with such special damages as were within the contemplation of the parties, but where there are no allegations as to the reasonable market value of the chattel as warranted or as delivered, the damages recoverable, if any, are restricted to special damages.

**7. Same: Automobiles § 5: Sales § 30— Buyer continuing to use chattel with knowledge of defects may not recover damages reasonably foreseeable from such use.**

A complaint alleging that the buyer purchased the automobile from defendant upon assurance of the defendant that any defects would be made good without cost to the buyer, that the buyer discovered that by reason of defects in the motor pump and improper adjustment of the carburetor, liquid gasoline escaped onto the motor in starting or attempting to start operation of the motor, that the buyer returned the car to defendant to remedy the defects, that the buyer discovered immediately thereafter that the defects had not been remedied, but that the buyer continued to use the automobile until it was destroyed by fire some six days thereafter, *is held* demurrable since it appears upon the face of the complaint that the damages resulted from the continued use of the automobile with knowledge of the defects under circumstances from which the hazard of fire was reasonably foreseeable, and

that therefore the damages resulted from the buyer's own negligence, thus precluding recovery either upon the theory of warranty or the theory of defendant's negligence.

**8. Pleadings § 19—**

Where facts constituting a defense precluding recovery appear upon the face of the complaint, such facts are properly considered upon demurrer, particularly when the demurrer is special and specifically points out such facts as a bar to plaintiff's action.

APPEAL by plaintiff from *Craven, Special Judge,* January 25 Special Civil Term, 1960, of MECKLENBURG.

The hearing below was on defendant's demurrer to the *modified amended complaint.*

The modified amended complaint contains, *inter alia,* these allegations: On January 15, 1957, Jo Ann Glenn purchased a new 1957 Chevrolet from defendant; and, on the same date, plaintiff issued to her its policy insuring the Chevrolet against loss by fire. On February 22, 1957, the Chevrolet was damaged by fire. Plaintiff paid to Jo Ann Glenn in settlement of its liability under said policy the sum of $2,384.03. Thereupon, Jo Ann Glenn assigned to plaintiff all claims and demands against any person, persons, firm or corporation arising from or connected with such fire loss or damage to the extent of the amount paid to her by plaintiff. Plaintiff's loss is $2,384.03 less the salvage value of the Chevrolet, to wit, $357.50.

Plaintiff, as subrogee, seeks to recover from defendant the sum of $2,026.53 with interest from February 22, 1957.

Proceedings prior to the hearing before Judge Craven were as follows: A demurrer by defendant to the original complaint, on the ground that plaintiff had not alleged facts sufficient to constitute a cause of action, was sustained by Judge Carr at December 8 Special Civil Term, 1958. Plaintiff did not except or appeal. Thereafter, as permitted by Judge Carr's order, plaintiff filed an amended complaint. Defendant then moved that designated portions of the amended complaint be stricken; and Judge Sharp, at December 7 Special Civil Term, 1959, entered an order allowing said motion and providing that defendant "answer, demur or otherwise plead to the amended complaint, as the said amended complaint is modified by this order."

The allegations of the modified amended complaint on which plaintiff bases its alleged right to recover from defendant are quoted below.

"5. (T)hat the defendant, through its duly authorized agents, assured the said Jo Ann Glenn that if any defects in materials or workmanship in said automobile should develop, or appear

within ninety (90) days after purchase or prior to the same having been driven four thousand (4,000) miles, that such defects would be made good by the defendant and without cost to the said Jo Ann Glenn; that the said Jo Ann Glenn purchased said automobile and paid the purchase price therefor, in cash, to the defendant and accepted delivery of said automobile on the 15th day of January 1957.

"6. That the plaintiff is informed and believes and so alleges, that immediately after purchasing said new automobile and receiving possession thereof, the said Jo Ann Glenn experienced serious difficulty in starting the motor of said automobile and immediately observed a strong odor of gasoline fumes in and about said automobile; that upon examining the motor and other parts of said automobile under the hood thereof, it was discovered that the motor and other areas of said automobile under the hood were saturated with gasoline; that the said Jo Ann Glenn experienced great difficulty in starting the motor of said automobile and operating the same continuously thereafter from the date of purchase until the same was destroyed by fire, as hereinafter alleged; that gasoline continued to escape from the fuel system of said automobile and to saturate the motor and other parts of said automobile and to cause excessive gasoline fumes to penetrate the passenger compartment of said automobile from the date of purchase until the same was destroyed, as hereinafter alleged; that the electric wiring system of said automobile was seriously defective in material and workmanship, that the fuel supply system of said automobile was seriously defective in material and workmanship in that the fuel pump pumped more gasoline than the carburetor could accommodate and the float on the carburetor of said automobile was defective and improperly adjusted, and as a result of said defective (and improper adjustment) said float failed to close or properly regulate the flow of gasoline being pumped into said carburetor thereby flooding the carburetor and saturating the motor and other parts of the automobile with gasoline escaping from the carburetor and ultimately resulted in the destruction of said automobile by fire, as hereinafter set forth.

"7. That the plaintiff is informed and believes and so alleges, that on the 16th day of February 1957, said automobile was returned to the place of business of the defendant in Charlotte, North Carolina, for the purpose of inspection and examination by the defendant or its employees and for correction of the de-

fects, above referred to; that the agents and employees of the defendant were notified of said defects in the electrical system of said automobile and the difficulty in starting the same and of the escaping gasoline and the saturation of the motor and other parts of said automobile by gasoline and the excessive fumes resulting from the escaping gasoline, and the agents and employees of the defendant were directed to examine the carburetor and other parts of the fuel system and the electric wiring system; that the agents and employees of the defendant did examine and inspect said automobile and experienced difficulty in starting the motor and observed the escaping gasoline and the saturation of the motor and other parts of the said automobile by gasoline.

"8. That the plaintiff is informed and believes and so alleges, that after the return of said automobile by the defendant to the said Jo Ann Glenn, as above set out, the said Jo Ann Glenn discovered that said defects had not been corrected; that the said Jo Ann Glenn continued to experience great difficulty in starting said automobile and gasoline continued to escape from the fuel system and to saturate the motor and other parts of said automobile; that the carburetor of said automobile was continuously saturated with gasoline and there was still a strong odor of gasoline fumes in and about said automobile.

"9. That the plaintiff is informed and believes and so alleges that on the 22nd day of February 1957, Mary Leah Glenn, a sister of Jo Ann Glenn, was driving said automobile with the consent and approval of said Jo Ann Glenn, on a public road in Union County; that as a result of the defective wiring and ignition system of said automobile the motor suddenly stopped while said automobile was being driven along said public road; that after considerable effort the motor was again started and said automobile was driven to the Roughedge Trading Store and Service Station; that upon leaving said store and service station, the said Mary Leah Glenn was unable to start the motor, and required assistance in starting said automobile; that immediately upon starting said automobile a large quantity of black smoke was discharged from the exhaust pipe, and there was a strong odor of gasoline fumes in and about said automobile; that after leaving said store and service station and while driving said automobile on a public highway of Union County said automobile ignited under the hood and continued to burn

from the front of said automobile to the rear until it was almost totally destroyed.

"10. That the plaintiff is informed and believes and so alleges that the destruction of said automobile by fire as above alleged was caused by and resulted directly from defects in material and workmanship in the electric wiring and ignition system and in defects in material and workmanship of the fuel supply system of said automobile in that, among other things, the fuel pump pumped more gasoline than the fuel system could accomodate and the float and valve seating mechanism in the carburetor was defective and out of adjustment and as a result of said defects and improper adjustment failed to close off the gasoline and control the flow of gasoline into the carburetor, thereby causing the carburetor to flood and to saturate the motor and other parts of said automobile including the exhaust manifold and other heated portions in motor with gasoline and thereby creating a dangerous fire hazard in and about said automobile."

In its demurrer to the modified amended complaint, defendant sets forth, as grounds of objection, that it does not state facts sufficient to constitute a cause of action against defendant in that it appears, *inter alia,* from the face thereof:

"(a) Jo Ann Glenn, the purchaser, owner and operator of the Chevrolet automobile referred to in the amended complaint, had full notice and knowledge of the alleged defect, or defects, if any, in said Chevrolet automobile from the date of the purchase thereof on or about January 15, 1957, until the date of the alleged fire, and alleged damage by fire, on the 22nd day of February 1957;

"(b) The said Jo Ann Glenn, the owner of the Chevrolet automobile referred to in the amended complaint, had full notice and knowledge of the alleged defective condition thereof, if any, from the 16th day of February 1957, the date upon which it is alleged that the said Chevrolet automobile was last delivered to the said Jo Ann Glenn, until the date of the alleged loss and damage by fire to the said Chevrolet automobile on the 22nd day of February 1957."

As further ground of objection, defendant asserts in its said demurrer that the modified amended complaint "does not allege any new or additional fact or facts in addition to those alleged in the original complaint, and . . . the order sustaining the demurrer of

the defendant to the original complaint constitutes *res judicata* of the matters and things alleged in the amended complaint, as modified by the order striking certain allegations therefrom, . . ."

After hearing, it was adjudged by Judge Craven "that the demurrer of the defendant to the amended complaint, as modified by the order striking certain allegations from the amended complaint be, and the same hereby is, sustained." Plaintiff appealed. Plaintiff's only exception and assignment of error is directed to the signing of said judgment by Judge Craven.

*Kennedy, Covington, Lobdell & Hickman and Mark R. Bernstein for plaintiff, appellant.*

*Helms, Mulliss, McMillan and Johnston and Larry J. Dagenhart for defendent, appellee.*

BOBBITT, J. The demurrer tests the sufficiency of the modified amended complaint. The rules applicable in a hearing on demurrer have been often stated and are well settled. *Pressly v. Walker,* 238 N.C. 732, 78 S.E. 2d 920; *Buchanan v. Smawley,* 246 N.C. 592, 595, 99 S.E. 2d 787. Our task is to determine whether the facts alleged, liberally construed in plaintiff's favor, state a cause of action.

Plaintiff, as subrogee, acquired only such rights against defendant as Jo Ann Glenn, its insured, possessed; and plaintiff's action is subject to all defenses defendant might have invoked if the action had been instituted by Jo Ann Glenn. 46 C.J.S., Insurance § 1211; 29A Am. Jur., Insurance § 1720; *Burgess v. Trevathan,* 236 N.C. 157, 160, 72 S.E. 2d 231, and cases cited.

Hereafter Jo Ann Glenn will be referred to as the buyer.

Plaintiff asserts the allegations of the modified amended complaint "state alternative causes of action against the defendant, any one of which will support a recovery." These alternative causes of action, so plaintiff contends, are (1) for breach of express warranty, (2) for breach of implied warranty, and (3) for negligence.

Our decisions are in accord with the provision of the Uniform Sales Act that "any affirmation of fact or any promise by the seller relating to the goods is *an express warranty* if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, and if the buyer purchases the goods relying thereon." (Our italics.) *Potter v. Supply Co.,* 230 N.C. 1, 7, 51 S.E. 2d 908, and cases cited; *Underwood v. Car Co.,* 166 N.C. 458, 82 S.E. 855.

Plaintiff's allegation is that the seller "assured" the buyer "that if any defects in materials or workmanship in said automobile should

develop, or appear within ninety (90) days after purchase or prior to the same having been driven four thousand (4,000) miles, that such defects would be made good" by the seller and "without cost" to the buyer. It is not alleged that the seller made any other affirmation or promise. Compare *Hill v. Parker,* 248 N.C. 662, 104 S.E. 2d 848. Moreover, there is *no allegation* as to *implied warranty.*

Plaintiff alleges that, when the car was delivered to the buyer on January 15, 1957, there were defects (1) in the electric wiring and ignition system and (2) in the fuel supply system; that the buyer took the car to defendant on February 16, 1957, for inspection and for correction of said defects; and that the buyer, after defendant returned the car to her, discovered said defects had not been corrected. The word "negligence" does not appear in plaintiff's allegations; and, unless implied from the allegations referred to above, there is no allegation that defendant failed to exercise due care to perform any legal duty it owed the buyer.

Upon breach of warranty as to quality, a buyer, at his election, may rescind unless he is barred by retention and use of the article of personal property after he discovers or has reasonable opportunity to discover the defect. *Hendrix v. Motors, Inc.,* 241 N.C. 644, 86 S.E. 2d 448. Here, it is alleged the buyer discovered said defects immediately after receiving the car on January 15, 1957, but retained possession and continued to use the car until the fire (caused by said defects) on February 22, 1957. These facts barred any right of the buyer to rescind. See *Hill v. Parker, supra,* p. 667, and cases cited. Moreover, the buyer did not at any time, either before or after the fire, purport to rescind the sale. Indeed, plaintiff's allegations do not disclose the purchase price paid by the buyer. They do disclose that, incident to the settlement with its insured, plaintiff acquired the damaged automobile.

A buyer's alternative remedy is to sue for damages; and, in such case, the measure of damages ordinarily recoverable for breach of warranty is the difference between the reasonable market value of the article as warranted and as delivered, with such special damages as were within the contemplation of the parties. *Hendrix v. Motors, Inc., supra,* and cases cited; *Underwood v. Car Co., supra,* and cases cited. Here, assuming plaintiff has sufficiently alleged warranty and breach thereof, there are no allegations as to the reasonable market value of the car as warranted or as delivered. Hence, under plaintiff's allegations, the damages recoverable, if any, must fall in the category of special (consequential) damages.

If it be conceded that plaintiff's allegations are otherwise sufficient to state a cause of action either for breach of warranty or for negligence, we are confronted by the fact plaintiff has affirmatively alleged that, immediately after the car was delivered to her on January 15, 1957, the buyer "experienced serious difficulty in starting the motor of said automobile and immediately observed a strong odor of gasoline fumes in and about said automobile," and "upon examining the motor and other parts of said automobile under the hood thereof, it was discovered that the motor and other areas of said automobile under the hood were saturated with gasoline," and that she operated the automobile continuously with knowledge of these conditions from January 15, 1957, until the fire on February 22, 1957. It is noted: Plaintiff did not allege that the buyer, apart from inspection made by defendant on February 16, 1957, made any effort whatever to have the defects corrected by defendant or otherwise.

As to warranty, it is our opinion, and we so hold, that damages caused by the buyer's continued use and operation of the automobile with knowledge that the ignition system was defective or maladjusted and that the motor and other parts under the hood were saturated with gasoline cannot be considered damages within the contemplation of defendant and the buyer. Indeed, it is inescapable that damages caused by the continued use and operation of the automobile under these circumstances must be attributed to negligence on the part of the buyer.

In 3 Williston on Sales, Revised Edition, § 614b, under the caption, "Consequential damages not contemplated are disallowed," it is stated: "If the buyer's own fault or negligence contributed to the injury, as by using the goods with knowledge of their defects, he cannot recover consequential damages, since such damages were under the circumstances not proximately due to the breach of warranty." Decisions are cited in support of the quoted statement.

In 46 Am. Jur., Sales § 801, it is stated: "It appears to be generally held however that a buyer whose negligence has contributed to the loss cannot recover for injuries sustained by reason of a breach of warranty."

In Sutherland on Damages, Fourth Edition, Vol. 1, p. 317, § 89, it is stated: "So where property is sold with a warranty of fitness for a particular purpose, if it be of such a nature that its defects can be readily, and in fact are, ascertained, yet the purchaser persists in using it, whereby losses and expenses are incurred, they come of his own wrong and he cannot recover damages for them as consequences of the breach of warranty."

In *Driver v. Snow*, 245 N.C. 223, 95 S.E. 2d 519, the plaintiff, based on alleged breach of implied warranty, sought to recover damages for personal injuries resulting from an explosion of a second-hand coal stove sold by defendant to plaintiff. In affirming judgment of involuntary nonsuit, *Higgins, J.*, quoted with approval this statement from the opinion of *Nash, J.*, in *Hudgins v. Perry*, 29 N.C. 102; "An implied warranty cannot extend to defects which are visible, and alike within the knowledge of the vendee and the vendor, or when the sources of information are alike open and accessible to each party." In distinguishing the cases relied upon by the plaintiff, *Higgins, J.*, said: "They deal with latent defects not discoverable by ordinary examination." Here, according to plaintiff's allegations, the buyer had actually discovered and was fully aware of the alleged defective condition of the automobile.

As to negligence, the applicable legal principles have been recently stated. *Kientz v. Carlton*, 245 N.C. 236, 96 S.E. 2d 14; *Tyson v. Manufacturing Co.*, 249 N.C. 557, 107 S.E. 2d 170; *Lemon v. Lumber Co.*, 251 N.C. 675, 111 S.E. 2d 868. Here, according to plaintiff's allegations, the alleged known defective condition was obvious, not latent; and such known defective condition was of such nature that the hazards reasonably foreseeable from the continued use and operation of the automobile were patent.

In *Gwyn v. Motors, Inc.*, 252 N.C. 123, 131, 113 S.E. 2d 302, the cause of the hazard was not obvious but concealed; and on this ground *Gwyn* was distinguished from *Harley v. General Motors, Corp.*, 103 S.E. 2d 191, a Georgia decision presently in point.

The facts that defeat plaintiff's alleged cause of action appear on the face of the modified amended complaint. Moreover, the demurrer is special, pointing out specifically these alleged facts as a bar to plaintiff's action. Hence, they are for consideration in passing upon the demurrer. *Harrell v. Powell*, 251 N.C. 636, 639, 112 S.E. 2d 81, and cases cited.

In *Aldridge Motors, Inc., v. Alexander*, 217 N.C. 750, 9 S.E. 2d 469, cited by plaintiff, the appeal was from an order denying defendant's motion to strike designated portions of the complaint. In this Court, the defendant demurred *ore tenus* to the complaint for failure to state facts sufficient to constitute a cause of action. This Court overruled the demurrer because the asserted ground of demurrer involved an affirmative defense defendant was required to allege and prove. Analysis of the record discloses a factual situation quite different from that here considered.

In *Aldridge,* both plaintiff and defendant were automobile dealers. Cars sold by Aldridge were purchased by Aldridge from defendant. A car sold by Aldridge to one Martin was delivered to Martin by defendant. In an action based on breach of implied warranty, Martin sued and obtained judgment against Aldridge. Thereafter, Aldridge instituted the action (involved in the appeal) to recover from the defendant the amount of Martin's judgment. The asserted ground of demurrer was that Aldridge, notwithstanding it had knowledge of the alleged defects soon after the car was delivered to Martin, failed to notify defendant thereof and thereby afford defendant an opportunity to correct such defects, and that by reason of such failure Aldridge was estopped to maintain the action. Suffice to say, the facts upon which the defendant relied as basis for the plea of estoppel interposed by demurrer were not alleged by Aldridge; and, since they did not appear on the face of the complaint, they were not for consideration in passing upon defendant's said demurrer.

Having reached the conclusion that the facts alleged in the modified amended complaint do not state a cause of action, it is unnecessary to consider whether Judge Carr's order sustaining defendant's demurrer to the original complaint constitutes *res judicata* as to the matters alleged in the modified amended complaint.

For the reasons stated, the order of Judge Craven sustaining the demurrer to the modified amended complaint is affirmed.

Affirmed.