ORVILLE S. HOLLENBECK v.   RAMSET FASTENERS, INC., A CORPORA-
TION,   (RAMSET   DIVISION — OLIN   MATHIESON   CHEMICAL   COR-
PORATION),  AND  ACOUSTI  ENGINEERING  OF  CAROLINAS,  INC.,
ALSO KNOWN AS ACOUSTICS, INC.

(Filed 25 May, 1966.)

**1. Sales § 5—**

A seller is bound by an express warranty when, and only when, it is
made to induce a sale and does induce such sale.

**2. Same—**

A tool used to force a steel bolt into concrete by means of a powder
charge is necessarily and inherently dangerous and can be safe only when
used with great care and caution, and a salesman's statement that the tool
was "safe" is merely an expression of opinion in the "puffing of his wares,"
and cannot constitute an express warranty.

**3. Sales § 16—**

Plaintiff contended that the salesman did not warn him of the possi-
bility of a ricochet in using a tool to force a steel bolt into concrete or
metal by the use of a powder charge. The evidence disclosed that plaintiff
had used a like tool several thousands of times and that he had used the
tool in question for a year or so prior to his injury from a ricocheting
bolt, and that the shield of the tool carried a printed statement warning
of the possibility of a ricochet. *Held:* Plaintiff cannot recover on the
theory of negligence of the salesman in failing to give warning.

**4. Same;   Negligence § 24b—**

The doctrine of *res ipsa loquitur* does not apply to an injury sustained
by a workman while using a tool to force bolts into concrete or metal by
a powder charge placed into the barrel of the tool when it appears that
plaintiff had used the tool for a number of years and therefore had knowl-
edge superior to defendant's salesman in regard to the use or condition of
the tool.

MOORE, J., not sitting.

PARKER, C.J., concurs in the result.

APPEAL by plaintiff from *Brock, S.J.,* November 15, 1965 Schedule
"C" Session of MECKLENBURG.

The plaintiff's action arose out of an accident in which he was
using a "powder actuated tool" manufactured by the defendant
Ramset and sold by the defendant Acoustics to the plaintiff's em-
ployer, Electrical Contracting and Engineering Company. It was
used to fasten construction materials to steel or concrete and is
barrel shaped with a shield on one end and a triggering mechanism
on the other. The stud, or pin, and a powder charge are placed into
the barrel and when the tool has been placed in the desired loca-

tion, the pin is forced into the construction material upon activating the charge by pulling the trigger.

The plaintiff had been an electrician for eleven or twelve years and had been using a powder actuated tool similar to the one used at the time of the accident for the previous seven years, having fired it more than four thousand times. He had been using the same tool he was using on the day of the accident for the last year or so and had successfully fired it three times that day before he was injured by the fourth pin. The accident occurred as the plaintiff attempted to use the tool in placing a pin into a twelve inch square "precast concrete column." Upon firing it, he felt a "terrific explosion" and was thrown back as something hit him in the left eye, causing its loss. He testified he had never known a stud to ricochet in all his experience in using this tool.

The manufacturer, Ramset Fasteners, Inc., whose name appears as a defendant, was never served with process and was not a party to this action. The plaintiff offered evidence that in the year 1957 W. H. Henderson, a salesman for Acoustics, told him and other employees of the defendant, "If the gun is used properly and all safety precautions adhered to, it was safe to use and not to be disturbed about it." The instrument itself was introduced in evidence and, printed on the shield of the tool is, "Never operate without setting safety control to minimize possible ricochet. Follow instruction manual." At the time of the statement attributed to Henderson, plaintiff's employer had already bought these instruments and they were in use by the plaintiff and other employees. The injury to the plaintiff did not occur until about three years later and he testified he had been using the tool in question for about a year. It may be deduced that the alleged warranty did not relate to the tool in question and was not relied upon in purchasing it; however, the plaintiff contends that this is an express warranty which was violated when he was injured.

At the close of the plaintiff's evidence, the defendant's motion for nonsuit was allowed; plaintiff excepted and appealed, assigning error.

*Carswell and Justice by James F. Justice, Peter L. Reynolds Attorneys for plaintiff appellant.*

*Boyle, Alexander and Carmichael by R. C. Carmichael, Jr., Attorneys for defendant appellee.*

PLESS, J.  Since the manufacturer of the powder actuated tool is not a party, the doctrine of implied warranty is not available to the plaintiff. He seeks to recover of the seller upon the alleged breach of an express warranty as summarized in the statement of facts. In

*Insurance Co. v. Chevrolet Co.*, 253 N.C. 243, 116 S.E. 2d 780, Bobbitt, J., speaking for this Court said:

> " '* * * any promise by the seller relating to the goods is *an express warranty* if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, and if the buyer purchases the goods relying thereon.' "

That case cites *Underwood v. Car Co.*, 166 N.C. 458, 82 S.E. 885 which says:

> "An express warranty is defined (as) * * *: 'When the seller makes affirmation with respect to the article to be sold, pending the treaty of sale, upon which it is intended that the buyer shall rely in making the purchase. * * * A warranty consists in representations and statement of and concerning conditions and quality of personal property, the subject of sale, made by the person making the sale to induce and bring it about.' "

Stating it another way: a seller is bound by an express warranty when, and only when, it is made to induce a sale and does induce such sale.

The plaintiff testified that the alleged warranty was made in 1957 but stated on cross examination that, "this particular tool I had used first in 1955 about three and one-half years before the accident." Nowhere does he say that the alleged warranty induced the sale or that he, or his employer, relied upon it.

A salesman is permitted to "puff his wares" and, in saying that a powder actuated tool is safe has merely expressed an opinion. There is no such thing as a safe shotgun or circular saw. Neither can a tool that, with the use of a powder charge, forces a steel bolt into concrete be termed "safe." They are necessarily and inherently dangerous and can be safe only when used with great care and caution.

Even if the plaintiff's evidence justified the finding of an express warranty, he has shown no breach of that warranty except the fact of his injury. His own evidence establishes that he had been using a similar tool for some seven years and had fired it more than four thousand times. The particular tool used on the date of his injury had been used by him "for the last year or so", and on the day of the accident he had successfully used it three times prior to being injured with the fourth pin.

The plaintiff also complains that Henderson did not warn him of the possibility of ricochet. While it is true that Henderson testified as to two cases of ricochet with a similar tool, plaintiff's evidence

does not show that the salesman had this knowledge at the time of the sale. The evidence does affirm, and specifically so, that each of the several thousand times the plaintiff picked up the tool, he was confronted with the printed statement on the shield which warned of a possible ricochet. He could hardly expect more impressive notice than this and exceptions relating thereto are overruled.

Neither can the plaintiff recover upon the theory of *res ipsa loquitur*. In 38 Am. Jur. § 299, p. 995, it is said:

> "The *res ipsa loquitur* doctrine is based in part upon the theory that the defendant in charge of the instrumentality which causes the injury either knows the cause of the accident or has the best opportunity of ascertaining it * * *. The inference which the doctrine permits is grounded upon the fact that the chief evidence of the true cause, whether culpable or innocent, is practically accessible to the defendant but inaccessible to the injured person. If the circumstances do not suggest or indicate superior knowledge or opportunity for explanation on the part of the party charged, or if the plaintiff himself has equal or superior means of information, the doctrine will not apply."

In view of the use by the plaintiff of this tool or a similar one for some seven years and four thousand "shots", it would be unreasonable to assume that the defendant had knowledge superior to the plaintiff's in regard to the use or condition of the tool.

We have given full consideration to all the arguments and contentions advanced by the plaintiff, but can find no basis upon which to hold the defendant liable.

Plaintiff's assignments of error are, therefore, overruled, and the judgment below granting the defendant's motion for nonsuit at the close of the plaintiff's evidence is

Affirmed.

MOORE, J., not sitting.

PARKER, C.J., concurs in the result.