CLIFF R. WYATT v. NORTH CAROLINA EQUIPMENT COMPANY.

(Filed 23 November, 1960.)

1. **Sales § 13—**
   Both an express and an implied warranty are elements of a contract of sale, binding the seller absolutely for the existence of the warranted qualities irrespective of any fault on the part of the seller.

2. **Sales §§ 17, 27—**
   The right to recover on a breach of warranty is limited to those in privity of contract, with the sole exception that an ultimate consumer or user may recover when the warranty is addressed to him.

3. **Same: Master and Servant § 18—**
   Ordinarily the rule that a seller is not liable to a stranger for breach of warranty is applicable to an employee of the buyer.

4. **Sales § 30—**
   Ordinarily the right of a stranger to the contract to recover for injury resulting from defect in the article sold must be based upon negligence.

5. **Sales §§ 17, 27: Master and Servant § 18—**
   Allegations to the effect that plaintiff was an employee of the pur-

chaser of the machinery and was injured while operating the machinery as a result of breach of warranty that the machinery was fit for the purposes for which it was designed and sold, fail to state a cause of action, since the employee, a stranger to the contract, is not entitled to recover for breach of warranty.

**6. Sales § 30—**

The seller of a chattel may be held liable by a stranger to the contract for injuries resulting to such stranger from the dangerous character or condition of the chattel only if the seller knew of such defect or could have discovered such dangerous character or condition in the exercise of reasonable care.

**7. Pleadings § 2—**

A cause of action consists of the facts alleged. G.S. 1-122.

**8. Pleadings § 12—**

A demurrer admits the facts alleged, but does not admit the pleader's legal conclusions.

**9. Negligence § 20—**

The complaint in an action to recover for negligence must allege facts upon which the legal conclusions of negligence and proximate cause may be predicated.

**10. Sales § 30:   Master and Servant § 18—   Allegations held insufficient to state cause against seller for injuries to employee of purchaser resulting from defect in machinery.**

In this action by an employee of the purchaser of machinery against the seller to recover for injuries sustained by the employee while operating the machinery, the complaint alleged that the machinery was inherently dangerous, that the bucket attached or caused to be attached to the dirt loading machinery by the seller was improperly balanced, that the bucket was warranted to raise and lower itself only by manual activation, and that while plaintiff was backing the machinery with the bucket raised, in order to load dirt on a truck, the machinery tilted forward, throwing plaintiff from the operator's seat to the hood, that at the same time the bucket began to raise and lower itself automatically, and that the arms or hydraulic cylinder attached to the bucket crushed the entire lower portion of plaintiff's body. *Held:* Demurrer was properly sustained in the absence of allegations as to defect in the design, material or construction of the machinery that would cause the bucket to raise or lower without being intentionally manipulated or accidentally struck, and the absence of allegations as to defects in the design, material or construction of the loader causing it to be improperly balanced when used normally for the purposes for which it was designed, the doctrine of *res ipsa loquitur* being inapplicable.

**11. Negligence § 5—**

The doctrine of *res ipsa loquitur* does not apply when the instrumentality causing the injury is not under the exclusive control or management of defendant.

APPEAL by plaintiff from *Craven, Special Judge,* April Term, 1960, of GASTON.

Civil action to recover damages on account of personal injuries sustained by plaintiff while operating, as an employee of Neal Hawkins Construction Company, an International Harvester Model T-D-9 Loader sold by defendant to said Construction Company, heard below on defendant's demurrer to amended complaint.

Plaintiff's factual allegations, summarized or quoted, are as follows:

On February 15, 1955, defendant, "engaged in . . . the selling and servicing of heavy equipment and machinery," sold the Loader to said Construction Company "with a warranty of its fitness for the purpose for which it was designed and sold," namely, for moving and elevating dirt and other materials, including the loading of such materials on trucks, and "with a warranty that the bucket attached to said loader would raise and lower itself only by manual activation or operation under normal operating conditions."

From February 15, 1955, until July 10, 1956, the Loader was at all times "properly and carefully serviced and maintained by its owner, Neal Hawkins Construction Company."

On July 10, 1956, about 1:00 p.m., on Piedmont Street in Kings Mountain, North Carolina, plaintiff, as operator, was using the Loader "to load dirt onto trucks for hauling." He placed the bucket in a digging position, "scooped the bucket partially full of damp dirt or earth," and then "immediately raised the bucket" to a position "approximately level with the top of the radiator" so that it (the bucket) "could be driven to the left or to the right." Then he commenced to move the Loader backwards to the point where trucks could be loaded. While moving the Loader backwards, "the rear end of said loader suddenly and without manual activation, raised itself from the ground and immediately thereafter said loader suddenly, violently, and without manual activation tilted forward, thereby throwing the plaintiff from his seat on said loader, to the hood covering the motor of the loader." ". . . immediately before and as the plaintiff was thrown onto the hood, over the motor of the loader, and after he landed on said hood, the bucket full of dirt attached to said loader, was raising and lowering itself automatically and without manual activation or operation on the part of the plaintiff." ". . . as the bucket full of dirt . . . lowered itself after the plaintiff was thrown onto the hood covering the motor of the loader, or as the loader lowered itself while the bucket was on the ground, the arms or supports holding and supporting the bucket to the loader, or the hy-

draulic cylinder attached thereto, crushed the entire lower portion of the plaintiff's body. . .''

Plaintiff was a competent and experienced operator of heavy equipment, and on July 10, 1956, was operating the Loader carefully and prudently in the manner and for the purposes for which the Loader was designed, manufactured and sold.

The alleged defects in the Loader were latent, "not visible to the naked eye, or capable of detection by ordinary care, nor were said defects apparent to the plaintiff."

Plaintiff alleged defendant negligently and carelessly (1) "attached or caused to be attached" to said Loader "a bucket or loading device which improperly balanced said loader" when used "for the purposes and in the manner for which it was designed, manufactured and sold," and (2) "attached a loading device" to the Loader "in such a manner that the bucket thereof raised and lowered itself automatically and without manual activation or operation"; and that defendant knew, or by the exercise of due care should have known, that the alleged defects in the Loader were of such nature as to cause it to tilt forward violently when used in the manner and for the purposes for which it was designed, manufactured and sold, and on account of such defects the Loader was "inherently dangerous" and "likely to cause great injury to its operator."

Plaintiff alleged that his injuries were caused by defendant's negligence in the respects alleged and by defendant's breach of warranty "of merchantability and fitness."

Defendant demurred on the ground that the amended complaint does not state facts sufficient to constitute a cause of action either in tort or for breach of warranty, setting forth with particularity the asserted deficiencies.

Judge Craven, in announcing his ruling sustaining the demurrer, inquired whether plaintiff desired leave to amend. Plaintiff's counsel stated that "further amendments were not desired" and that plaintiff would rest upon the pleading then before the court. Whereupon, judgment, sustaining the demurrer and dismissing the action, was entered. Plaintiff excepted and appealed.

*William N. Puett and E. R. Warren for plaintiff, appellant.*
*Allen & Hipp, Thomas W. Steed, Jr., and L. B. Hollowell for defendant, appellee.*

BOBBITT, J. A warranty, express or implied, is contractual in nature. Whether considered collateral thereto or an integral part

thereof, a warranty is an element of a contract of sale. 77 C.J.S., Sales § 302; 46 Am. Jur., Sales § 299.

"The obligation arising under a warranty is that of an undertaking or promise that the goods shall be as represented or, more specifically, a contract of indemnity against loss by reason of defects therein." 77 C.J.S., Sales § 302(d). "The effect of an express warranty undoubtedly is to bind the seller absolutely for the existence of the warranted qualities. If an implied warranty is properly called a warranty, the consequences should be similar. It should make no difference, therefore, whether the seller was guilty of any fault in the matter." Williston on Sales, Revised Edition, § 237.

"Subject to some exceptions and qualifications, it is a general rule that only a person in privity with the warrantor may recover on the warranty." 77 C.J.S., Sales § 305(b); 46 Am. Jur., Sales § 306.

Our decisions are in accord. *Thomason v. Ballard & Ballard Co.*, 208 N.C. 1, 179 S.E. 30, and cases cited. Absent privity of contract, there can be no recovery for breach of warranty except in those cases where the warranty is addressed to an ultimate consumer or user. Ordinarily, the rule that a seller is not liable for breach of warranty to a stranger to the contract of warranty is applicable to an employee of the buyer. *Berger v. Standard Oil Co.* (Ky.), 103 S.W. 245, 11 L.R.A. (N.S.) 238. Negligence is the basis of liability of a seller to a stranger to the contract of warranty. *Enloe v. Bottling Co.*, 208 N.C. 305, 180 S.E. 582, and cases cited; *Caudle v. Tobacco Co.*, 220 N.C. 105, 16 S.E. 2d 680.

In *Simpson v. Oil Company*, 217 N.C. 542, 8 S.E. 2d 813, cited by appellant, *Seawell, J.*, referring to *Thomason, supra*, said: "The Court simply held that the purchaser from the retail dealer was neither party nor privy to the contract between the vendor and vendee and, therefore, could not avail himself of any warranty that may have existed between them." In *Simpson*, the basis of plaintiff's cause of action against the manufacturer and distributor of "Amox" was the warranty *to the ultimate consumer* appearing on the can sold to the druggist and purchased from him by plaintiff. In this connection, see Williston, *op. cit.*, § 244(a).

In *Davis v. Radford*, 233 N.C. 283, 63 S.E. 2d 822, cited by appellant, a retailer of "Westsal," having been sued for damages for the alleged wrongful death of his customer on account of breach of implied warranty that the product was fit for human consumption, was held entitled to join the wholesaler from whom he purchased the product and to recover over against the wholesaler for any loss he might suffer on account of plaintiff's action. While the question was not

presented for decision, the opinion of *Devin, J.* (later *C. J.*), intimates that, under the ruling in the *Simpson* case, the plaintiff, had he elected to do so, could have maintained an action against the wholesaler. The pleadings disclosed that "Westsal," a salt substitute, was a patented bottled product. The wording of the notice or label appearing on the sealed bottle of "Westsal" is not disclosed.

The alleged warranties were made by defendant to the Construction Company incident to the sale of February 15, 1955; and plaintiff, a stranger to that transaction, does not allege facts sufficient to entitle him to recover damages for breach thereof.

In respect of negligence, this general statement is pertinent:

"One who supplies directly or through a third person a chattel for another to use, is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be in the vicinity of its probable use, for bodily harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier (a) knows, or from facts known to him should realize, that the chattel is or is likely to be dangerous for the use for which it is supplied; (b) and has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition; and (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be so." Restatement, Torts, § 388.

"Liability may be imposed on a manufacturer who sells an article likely to cause injury in its ordinary use because of some latent defect or because inherently dangerous in the use to which he knows it will be put." *Lemon v. Lumber Co.,* 251 N.C. 675, 677, 111 S.E. 2d 868; *Tyson v. Manufacturing Co.,* 249 N.C. 557, 107 S.E. 2d 170; *Gwyn v. Motors, Inc.,* 252 N.C. 123, 126, 113 S.E. 2d 302.

As to the seller of a chattel known to have been manufactured by another, the rule has been stated as follows: "A vendor of a chattel made by a third person which is bought as safe for use in reliance upon the vendor's profession of competence and care is subject to liability for bodily harm caused by the vendor's failure to exercise reasonable competence and care to supply the chattel in a condition safe for use." Restatement, Torts, § 401. Under this rule, liability depends upon whether such seller, by the exercise of reasonable care, could have discovered the dangerous character or condition of the chattel. Restatement, Torts, § 402.

Plaintiff alleges the Loader was "inherently dangerous" and "likely to cause great injury to its operator." As stated by *Rodman, J.,* in *Lemon v. Lumber Co., supra:* "It is not sufficient to merely allege

that an article is inherently dangerous. Unless the mere descriptive name indicates the dangerous character, the pleader must set out the facts which are relied upon to fix the dangerous character of the article."

Defendant was not the manufacturer of the International Harvester Loader. It sold and serviced such equipment. While plaintiff alleges defendant knew or by the exercise of due care should have known of the alleged defects, he also alleges the defects were latent and not capable of detection by ordinary care.

Plaintiff alleges the "bucket" and "loading device" were attached (or caused to be attached) to the Loader by defendant. Ordinarily, the descriptive term, International Harvester Loader, would imply a complete piece of equipment. If plaintiff, by such allegations, means to imply that the Loader was to some extent assembled by defendant, nothing alleged indicates this was done otherwise than in the manner prescribed by the manufacturer.

Plaintiff alleges the Construction Company "properly and carefully serviced and maintained" the Loader from February 15, 1955, to July 10, 1956. There is no allegation that the Loader, during this period of use, had either tilted forward without manual activation or that the bucket had raised or lowered itself without manual activation by the operator. Nor do plaintiff's allegations state or imply that defendant, at any time after February 15, 1955, either inspected or serviced the Loader or was requested to do so.

Before considering plaintiff's allegations as to the character of the alleged defects and what occurred when plaintiff was injured, we advert to certain well established legal principles.

The cause of action consists of the facts alleged. G.S. 1-122; *Lassiter v. R. R.,* 136 N.C. 89, 48 S.E. 642. "The complaint must show that the particular facts charged as negligence were the efficient and proximate cause, or one of such causes, of the injury of which the plaintiff complains." *Stamey v. Membership Corp.,* 247 N.C. 640, 645, 101 S.E. 2d 814. The facts alleged, but not the pleader's legal conclusions, are deemed admitted where the sufficiency of a complaint is tested by demurrer. *Stamey v. Membership Corp., supra.*

As stated by *Johnson, J.,* in *Shives v. Sample,* 238 N.C. 724, 79 S.E. 2d 193: ". . . negligence is not a fact in itself, but is the legal result of certain facts. Therefore, the facts which constitute the negligence charged and also the facts which establish such negligence as the proximate cause, or as one of the proximate causes, of the injury must be alleged."

It is alleged that, on the occasion of his injury, plaintiff dug and

scooped dirt, raised the bucket to a position approximately level with the top of the radiator, then backed the Loader towards a point where trucks were to be loaded. How far had he backed the Loader before he was thrown from the operator's seat? When thrown from the operator's seat, was plaintiff backing the Loader on level ground or up or down an embankment or incline? Plaintiff's allegations provide no answers. Obviously, when the Loader tilted forward it was not properly balanced. But no facts are alleged as to defects in the design, materials or construction of the Loader causing it to be improperly balanced when in use under normal operating conditions for the purposes for which it was designed.

It is alleged that, on the occasion of his injury, plaintiff raised the bucket, then filled or partly filled with dirt, to a position approximately level with the radiator, so that the bucket "could be driven" to the left or right, and kept it in this position while backing the Loader until the time the Loader tilted forward. In the light of these allegations, the only reasonable meaning to be given plaintiff's allegation that the bucket raised and lowered "without manual activation or operation" is that plaintiff did not, by manipulation of a lever or similar mechanical device, cause such movement. But no facts are alleged as to defects in the design, materials or construction of the mechanism for the raising and lowering of the bucket that would cause the bucket to raise or lower unless the lever or similar mechanical device was manipulated intentionally or accidentally struck. Plaintiff alleges "the rear end of said loader suddenly and without manual activation raised itself from the ground and . . . tilted forward, thereby throwing (him) from his seat on said loader to the hood covering the motor of the loader," and "immediately before and as (he) was thrown onto the hood . . . the bucket . . . was raising and lowering itself automatically and without manual activation or operation on the part of the plaintiff."

. Analysis of the complaint impels the conclusion that the allegations to the effect the Loader was improperly balanced must be considered a mere conclusion of the pleader in the absence of factual allegations as to what defects, if any, in the design, materials or construction caused it to tilt forward on the occasion of plaintiff's injury. As to the allegations that the bucket raised and lowered itself on the occasion of plaintiff's injury "without manual activation or operation": It is questionable whether the facts alleged are sufficient to show this was a proximate cause of the tilting forward of the Loader or an accidental result thereof. Be that as it may, the fact the bucket raised and lowered "without manual activation or operation" on the

occasion of plaintiff's injury, absent factual allegations as to defects in the design, materials or construction thereof causing it to so act, is insufficient basis for plaintiff's conclusion that defendant was negligent in this respect.

The doctrine of *res ipsa loquitur* does not apply "when the instrumentality causing the injury is not under the exclusive control or management of the defendant." *Smith v. Oil Corp.*, 239 N.C. 360, 367, 79 S.E. 2d 880.

Since the factual allegations of the complaint are insufficient to show plaintiff's injury was proximately caused by the negligence of defendant, the judgment of the court below is affirmed.

Affirmed.