DANIEL J. CRAVEN v. JOEL DIMMETTE, LUTHER OEHLBECK, ROBERT L. ROGERS, D/B/A THE SPORTS CENTER

No. 6925DC273

(Filed 13 August 1969)

1. **Pleadings § 2— cause of action**
   A cause of action consists of the facts alleged.

2. **Sales § 16— breach of express warranty — pleadings**
   Allegations of the complaint *are held* to state a cause of action for breach of express warranty in the sale of a boat.

3. **Sales § 5— express warranty defined**
   An express warranty is any affirmation of fact or any promise by the seller relating to the goods which has the natural tendency to induce the buyer to purchase the goods.

4. **Sales § 17; Boating— breach of express warranty — boat — sufficiency of evidence**
   In an action for damages for breach of express warranty in the sale of a boat which was billed as a "new demonstrator," plaintiff's evidence

that the boat listed twelve to fourteen inches to one side *is held* sufficient to be submitted to the jury on issue of breach of dealer's express warranty that the boat was a good, new boat which would serve plaintiff's purpose in pulling water skiers.

APPEAL by plaintiff from *Snyder, J.,* February 1969 Civil Session of District Court held in CALDWELL County.

Civil action for damages for breach of warranty in the sale of a boat.

From a judgment of nonsuit entered on motion of the defendants at the close of plaintiff's evidence, the plaintiff appealed.

*Ted S. Douglas for plaintiff appellant.*

*Townsend and Todd by J. R. Todd, Jr., for defendant appellees.*

MALLARD, C.J.

[1] The parties are not in agreement as to whether plaintiff alleged a cause of action for fraud, or for breach of warranty. A cause of action consists of the facts alleged. *Wyatt v. Equipment Co.,* 253 N.C. 355, 117 S.E. 2d 21 (1960).

In his amended complaint, plaintiff alleges:

"III. That on or about the 10th day of August, 1966, the plaintiff purchased from the defendants a 16-foot Larson boat (motor No. 1945306) for a total price of $4,000.00 when boat was billed to the plaintiff as a NEW DEMONSTRATOR.

IV. Prior to, and at the time of the purchase of this boat by the plaintiff from the defendants, the defendants told the plaintiff and represented to the plaintiff that this boat was a NEW DEMONSTRATOR, in perfect condition and had been owned and used only by Mr. Oehlbeck, one of the defendants, as a demonstrator, and that the boat was suitable for the purposes for which the plaintiff intended to use the boat.

V. That the aforesaid representations of the defendants concerning the boat were false, and were known by the defendants to be false, at the time that the defendants made them; that these false representations were made by the defendants with intent to deceive the plaintiff, and to induce the plaintiff to purchase the boat, and they did in fact deceive the plaintiff, and in reliance upon them, he purchased said boat from the defendants and made the down payment of his used boat which had a fair market value of $1,350.00, financing the balance of

$2,650.00 with the Commercial Credit Corporation, Hickory, North Carolina.

VI.  On or about the 13th day of August, 1966, the plaintiff discovered for the first time that the same boat which he had purchased from the defendants on August 12, 1966, did not perform properly upon the water and was defective in that the boat listed to one side — on approximately 45 degrees list — and would not perform properly under normal conditions, was dangerous and unsafe under normal conditions and use, and was not suitable for the purpose for which the plaintiff intended to use the boat, all of which were known to the defendants.

VII.  That on or about the 17th day of August, 1966, the plaintiff notified the defendants of the defect in said boat and returned the boat to the defendants on that date for repairs to be made.

VIII.  That the defendants retained the boat for two weeks, attempted to repair the boat and informed the plaintiff on August 31st that the boat was repaired. That on the same day the plaintiff and the defendants' manager took the boat on a trial run and discovered that the boat had not been repaired but continued to list the aforementioned degrees and was in the same condition as it was the day the plaintiff purchased the boat. That the plaintiff on the same day returned the boat to the defendants again for the purpose of making repairs and remedying the defect.

IX.  That the defendants retained the boat for the purposes of remedying the defect, and the plaintiff made numerous visits to the defendants place of business inquiring as to whether or not the boat had been repaired.

X.  That on or about the 20th day of December, 1966, the plaintiff was informed by one of the defendants, Joel Dimmette, that the boat was repaired and the defendant Joel Dimmette accompanied the plaintiff to the river for another trial run. That the defendants admitted that the boat was defective in that it continued to list at about a 45-degree angle and that it was unsafe to operate the boat in this condition, being the same condition as it was the day the plaintiff purchased it.

XI.  That the plaintiff made the September payment of $87.96 and the November payment of the same amount during which time the defendants made repeated promises to repair the defect in the boat, and continuously failed to do so.

XII. That the plaintiff refused to make further payments until the boat was repaired and that the manager and agent of the defendants informed the plaintiff that the boat's defect could not be remedied.

XIII. That the aforementioned defect was not observable to the plaintiff upon a thorough inspection, but was an inherent and hidden defect and not detectable while the boat is out of the water.

XIV. That the plaintiff requested that the defendants return his boat and the payments in the amount of $175.92, but the defendants refused to and further refuses to make the repairs necessary to operate the boat safely.

XV. That at the time of the defendants' false representations to the plaintiff as to the condition of said boat, the defendants well knew that the boat had previously been used by one of the defendants, Luther Oehlbeck, and that said Luther Oehlbeck knew the boat did not operate properly, but was dangerous and unsafe in that condition, and was not suitable for the purpose for which the plaintiff intended to use the boat for.

XVI. As a direct and proximate result of the fraud practiced upon him by the defendants, as herein set forth, the plaintiff has been damaged in the sum of $4,000.00"

The defendants answered denying the material allegations of the complaint and by way of counterclaim sought to recover $1418.06 plus interest as the balance allegedly due on the contract for the sale of the boat. In the transcript of the testimony, it is revealed that the defendants took a voluntary nonsuit as to their counterclaim after the entry of the nonsuit.

In the case of *Hill v. Parker,* 248 N.C. 662, 104 S.E. 2d 848 (1958), involving the purchase of an automobile that had been used as a demonstrator, the Supreme Court held that a complaint in language similar to that used in the complaint in the case before us constituted a cause of action for breach of express warranty. The court there said:

"It is manifest that the plaintiff has alleged a cause of action for damages for breach of express warranty. (Citations omitted). This being so, we are not concerned with whether the complaint also superadds a cause of action for false warranty. (Citations omitted). Nor are we concerned with whether the complaint alleges other causes of action, including one based on total failure of consideration on the hypothesis that the auto-

mobile was worthless and unfit for the purpose for which it was sold." (Citations omitted).

**[2]**    We think, in this case, the pleadings when liberally construed (G.S. 1-151) allege a cause of action based upon express warranty.

"A warranty, express or implied, is contractual in nature. Whether considered collateral thereto or an integral part thereof, a warranty is an element of a contract of sale. 77 C.J.S., Sales § 302; 46 Am. Jur., Sales § 299.

'The obligation arising under a warranty is that of an undertaking or promise that the goods shall be as represented or, more specifically, a contract of indemnity against loss by reason of defects therein.' 77 C.J.S., Sales § 302(d). 'The effect of an express warranty undoubtedly is to bind the seller absolutely for the existence of the warranted qualities. . . .' *Williston on Sales, Revised Edition,* § 237." *Wyatt v. Equipment Co.,* 253 N.C. 355, 117 S.E. 2d 21 (1960).

**[3]**    In defining the nature of an express warranty, Justice Bobbitt in *Insurance Co. v. Chevrolet Co.,* 253 N.C. 243, 116 S.E. 2d 780 (1960), said:

"Our decisions are in accord with the provision of the Uniform Sales Act that 'any affirmation of fact or any promise by the seller relating to the goods is *an express warranty* if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, and if the buyer purchases the goods relying thereon.' "

Plaintiff's only assignment of error is to the entry of the judgment of nonsuit at the close of his evidence.

**[4]**    The defendants were dealers in boats. Plaintiff offered evidence tending to show that he told defendant Oehlbeck that he wanted a boat "to pull skiers and just run about in." Defendant Oehlbeck told him that it was a new demonstrator and was the same as a new boat, a good boat, "a cream puff," and a boat that would serve plaintiff's purpose. Plaintiff testified that he relied upon such representations. He purchased the boat after being induced by such representations. The boat was not as represented, in that when he put it in the water, it listed twelve to fourteen inches to one side, threw water high in the air so that skiers being pulled could not be seen, and it did not handle properly. Such conditions were not corrected. The evidence further tends to show that the defendant Oehlbeck knew that the boat listed and did not handle properly at the time of informing the plaintiff that it would serve his purpose. The

jury should be permitted to decide whether such was intended as a warranty and whether there has been a breach thereof. *Hodges v. Smith*, 158 N.C. 256, 73 S.E. 807 (1912).

For the reasons stated, the judgment of nonsuit is

Reversed.

BRITT and PARKER, JJ., concur.